# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3789

_____

National Federation of the Blind of
Missouri, a Missouri not-for-profit
corporation,

       Plaintiff - Appellant,

Gary L. Wunder, an individual; Edwin
C. Bryant, an individual; John Ford, an
individual,

       Plaintiffs,

National Federation of the Blind, Inc.,

       Plaintiff - Appellant,

       v.

Denise Cross, in her official capacity as
Director of the Division of Family
Services of the State of Missouri; Sally
L. Howard, in her official capacity as
Deputy Director and Supervisor of the
Rehabilitation Services for the Blind of
the State of Missouri,

       Defendants - Appellees,

Mae E. Weston, in her official capacity
as District Supervisor of the North St.
Louis Office of the Rehabilitation
Services for the Blind,

Appeal from the United States
District Court for the Eastern
District of Missouri.

Defendant.                                    *

_____

Submitted: May 13, 1999
Filed: July 12, 1999

_____

Before LOKEN, HANSEN, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

The Rehabilitation Services for the Blind (RSB) is a Missouri state agency which receives federal funding and which developed a policy prohibiting its employees from distributing literature or discussing services offered by consumer groups such as the National Federation of the Blind (NFB) and its local affiliate, National Federation of the Blind of Missouri (NFB-Mo). NFB and NFB-Mo brought this action against state officials for violating the Rehabilitation Act, the First Amendment, and the Equal Protection clause. The district court[1] granted summary judgment to the defendants after finding that NFB and NFB-Mo lacked standing to pursue their claims under the Rehabilitation Act and that the other claims failed on the merits. NFB and NFB-Mo appeal from the judgment, and we affirm.

I.

RSB is a vocational rehabilitation agency serving blind Missourians. It is administered by the Missouri Division of Family Services and receives funding under the Rehabilitation Act, 29 U.S.C. §§ 720 - 796(l). RSB staff teach independent living skills, provide mobility training, assist with job searches, and provide counseling.

_____

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

Denise Cross is the Director of the Division of Family Services of the State of Missouri and in this capacity supervises the RSB. Sally L. Howard is the Deputy Director and Supervisor of RSB and is responsible for managing the agency's seven district offices throughout Missouri.

NFB and NFB-Mo are not for profit membership organizations which aim to promote integration of the blind into society on equal terms with the sighted. They offer support groups and services through volunteer networks, they distribute educational literature, and they engage in advocacy regarding issues of concern to blind persons. Their aggressive advocacy and support programs are built on the philosophy that blindness is a characteristic, not a disability. They oppose programs that they feel emphasize the limitations of blindness.

The American Council of the Blind (ACB) and its affiliate, the Missouri Council of the Blind (MCB), are also not for profit organizations which advocate for the blind. They formed after a philosophical disagreement among NFB members led some to break away and start a new volunteer organization. Certain members of the Missouri chapter of the NFB were among those who encouraged the development of a spin-off organization. ACB and NFB and their local affiliates, MCB and NFB-Mo, promote differing philosophical approaches to blindness and compete for members, and there apparently continues to be some hostility between the competing groups. RSB considers both NFB and ACB and their local affiliates to be "consumer organizations" because their charters require that they be run by members of the blind community.

In the summer of 1994, MCB complained to the RSB that some of its counselors had been actively recruiting members for NFB-Mo. Then RSB director David Vogel wanted to avoid any perception in the blind community that RSB was not acting impartially, so he restricted the extent to which its counselors and other employees could tell clients about materials and services provided by MCB and NFB. He issued a policy in September 1994, instructing agency representatives not to suggest or

3

recommend one consumer group over another or to reveal whether they belonged to either. The RSB central office provided each new client with some limited information about the consumer organizations and their phone numbers, but RSB staff were generally prohibited from distributing literature produced by the organizations. Although counselors could potentially receive special permission to distribute materials or suggest services provided by one consumer group or the other, it does not appear that this ever occurred.

Sally Howard took over as director of RSB in April 1995, and she reaffirmed and strengthened the policy regarding consumer groups. She circulated a new memo in July 1995 supplementing Vogel's initial memorandum on the subject. This memo acknowledged that under existing policy, RSB staff were prohibited from directly passing out any kind of consumer group literature to clients, but also recognized that staff might often have clients who would benefit from the resources available from the consumer groups. The memo instructed staff to inform their blind clients of the existence of the two organizations and ask if they would like to sign a release of information to both groups. The names of clients who signed the release would be forwarded to both NFB-Mo and MCB, who could then inform the individuals about resources they had to offer.

Although defendants contend that RSB staff members retained some authority to inform clients about particular services, this issue is contested. In reviewing a summary judgment, all reasonable inferences from the facts must be drawn in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). We therefore assume that literature produced by NFB and NFB-Mo can not be displayed in the RSB lobby or otherwise distributed by the agency, and that RSB staff can no longer inform individual clients about any specific relevant resource offered by either organization.

4

NFB-Mo objected to the RSB policy on the grounds that it chilled its speech and made it more difficult for it to reach members of the blind community. It apparently felt that the policy weakened its message to its competitive disadvantage in respect to MCB, which has a different approach to blindness.

NFB-Mo and three of its members filed this action in August of 1996. They named as defendants Carmen K. Schulze, then director of the Missouri Division of Family Services, Sally L. Howard, director of RSB, and Mae E. Weston, an RSB district supervisor. The plaintiffs sought a temporary restraining order (TRO) and preliminary and permanent injunctive relief to bar these state officials from implementing the policy prohibiting RSB staff from handing out NFB and NFB-Mo publications or referring RSB clients to NFB-Mo sponsored programs or services.

On August 27, 1996 the district court[2] heard arguments on the TRO motion and denied it on the grounds that NFB-Mo had failed to demonstrate irreparable harm. MCB moved to intervene in the proceedings, but no action was then taken on its motion. Evidentiary hearings were held in October 1996 on the request for a preliminary injunction, and a different district court judge[3] ruled that NFB-Mo had failed to establish irreparable harm and denied the request. MCB's request to intervene was also subsequently denied.

NFB-Mo, through new attorneys, filed an amended complaint. This new complaint dropped the individual members as plaintiffs, but added NFB-Mo's parent organization, NFB. The amended complaint also eliminated Mae E. Weston as a defendant. In count I plaintiffs request relief under 42 U.S.C. § 1983 to redress alleged

---

[2]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

[3]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

5

violations of the Rehabilitation Act. They contend that the RSB policy violated the agency's statutory duties under the Rehabilitation Act to establish programs that make "'maximum utilization' of 'public or other vocational or technical training programs or other appropriate resources in the community,'" to maintain information referral programs and provide referrals to other agencies when appropriate, and to provide programs that enhance the individual client's choice and control in determining rehabilitation goals and objectives. Count II alleges that Schulze and Howard violated the plaintiffs' Equal Protection rights by permitting other similarly situated non-governmental organizations greater access to RSB and its clients. Counts III and IV raise two First Amendment challenges. The complaint requests a declaration that RSB's policies are unconstitutional or otherwise illegal and a permanent injunction prohibiting defendants from implementing the challenged policies. It also sought injunctive relief requiring that defendants establish programs to refer clients to community resources, including those offered by the plaintiffs. Finally, it requests attorney fees and costs and all other relief deemed appropriate.

Each side moved for summary judgment, and the district court granted the defendants' motion and dismissed all claims. The court found that NFB and NFB-Mo did not have *jus tertii* standing to bring their Rehabilitation Act claims because "it is not clear that the blind community, whose rights NFB is seeking to assert, is suffering any impairment of its enjoyment of services under the Rehabilitation Act." It also ruled that plaintiffs had not made out viable claims under the First Amendment or Equal Protection clause.

NFB and NFB-Mo argue on appeal that they do have standing under the Rehabilitation Act and that the court erred in granting summary judgment to the defendants on the merits of their constitutional claims. After the appeal was filed Denise Cross, the new director of Missouri Division of Family Services, was substituted for her predecessor Carmen K. Schulze.

6

II.

A.

NFB (here and afterwards used collectively to include NFB-Mo also) asserts that it has standing in its own right to assert claims for violations of the Rehabilitation Act and that the court should also grant it *jus tertii* or third party standing to raise the claims of RSB clients who are not NFB members and are injured by the state's failure to provide information about NFB. It further argues it has representational standing to assert the rights of its members, consumers of RSB services who have been denied the right to have RSB counselors discuss with them services offered by NFB that might be appropriate to their needs.

We review de novo the district court's dismissal of appellant's Rehabilitation Act claims for lack of standing, Burton v. Central Interstate Low-Level Radioactive Waste Compact Comm'n, 23 F.3d 208, 209 (8th Cir. 1994), and our review is confined to the standing issue absent unusual circumstances not present in this case. Singleton v. Wulff, 428 U.S. 106, 119-21 (1976). We do not review the facts to see if appellants have proven their allegations, but instead accept as true all material allegations of the complaint so long as they are not incapable of proof at trial. National Wildlife Fed'n v. Agricultural Stabilization and Conservation Serv., 901 F.2d 673, 677 (8th Cir. 1990).

A party has standing to bring a claim only if it has satisfied constitutional standing requirements and if the court determines as a prudential matter that the party is the appropriate proponent of the legal rights raised. Federal courts only have jurisdiction to hear actual cases and controversies. U.S. Const. art. III, § 2, cl.1. To show that an Article III case or controversy exists, the party must show it has suffered some actual or threatened injury that can be traced to the allegedly illegal conduct and that is capable of being redressed. Schanou v. Lancaster County Sch. Dist. No. 160,

7

62 F.3d 1040, 1045 (8th Cir. 1995). The party must also be the "proper proponent of the legal rights at issue." Singleton, 428 U.S. at 112.

At the summary judgment stage the party invoking federal jurisdiction must have at least alleged specific facts that, taken as true, demonstrate the party suffered an injury in fact, that is one which is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, (1992) (citations omitted); see also Arkansas Acorn Fair Hous., Inc. v. Greystone Dev., Ltd., 160 F.3d 433, 434 (8th Cir. 1998). This helps ensure that "the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982). Standing may be found when there is a concrete and demonstrable injury to an organization's activities which drains its resources and is more than simply a setback to its abstract social interests. See Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982). "Absent specific facts establishing distinct and palpable injuries fairly traceable to [the defendants' conduct]" the injury in fact requirement is not satisfied. Arkansas Acorn Fair Hous., Inc, 160 F.3d at 435.

NFB contends it has a cognizable injury in fact because the RSB policy makes it more difficult for blind individuals who are not NFB members to learn about its services. This frustrates its organizational purpose and deprives it of access to RSB clients which it claims is required by the Rehabilitation Act. While it has alleged that the policy does not permit RSB to convey information needed by its clients, NFB has not alleged that the policy has impacted *it* in any measurable way. It has not alleged that NFB has suffered a reduction in membership, and there are no allegations that restrictions have been placed on its ability to provide information directly to the blind community or to its own members.

8

NFB also contends that the RSB policy which prevents counselors from providing information about it to agency clients is a denial of access sufficient to establish injury. It cites Adarand v. Pena, 515 U.S. 200 (1995), and Village of Arlington Heights v. Metropolitan Housing Dev. Corp, 429 U.S. 252 (1976), in support. In Village of Arlington Heights, the Court found that a low-income housing corporation had standing to challenge a zoning decision which barred it from building a particular planned housing project. 429 U.S. at 261-63. The Court reasoned that the corporation had already expended funds planning the project, and its objective of providing low-cost housing in an area of scarcity would be hampered by the zoning decision. Id. at 263. The Court emphasized that "[t]he specific project MHDC intends to build, whether or not it will generate profits, provides that 'essential dimension of specificity' that informs judicial decision making," id. (citation omitted), and that the "challenged action of the petitioners stands as an absolute bar to constructing the housing MHDC had contracted to place on the . . . site," id. at 261. The plaintiff in Adarand was found to have standing to seek prospective relief on its claim that a classification system used to evaluate bids for certain government contracts was discriminatory even though it could not show it would be the low bidder on any particular contract. The asserted injury was the fact that a system had been put in place which would prevent it from competing on an equal footing. Adarand, 515 U.S. at 211.

The "denial of access" NFB seeks to redress here is the opportunity to have RSB employees advise clients of NFB resources. There is no allegation, however, that the policy stands as a bar to any NFB program or makes it uncompetitive. The policy also applies to the other blind-run advocacy organization in Missouri. Although the policy may cause NFB to turn to other methods of disseminating information about its programs, there is no allegation that it interferes with NFB's own activities. This record

does not contain allegations similar to the injuries recognized in <u>Village of Arlington Heights</u> or <u>Adarand</u>.[4]

NFB has not established a distinct and palpable injury to it sufficient to create a case or controversy within the meaning of Article III.  Since NFB has not met the injury in fact requirement, it lacks standing to raise the Rehabilitation Act claims.  <u>See Arkansas Acorn Fair Housing, Inc.</u>, 160 F.3d at 435.  In addition, because it has not established an injury in fact, we need not reach the issue of whether as a prudential matter it would be appropriate also to grant NFB *jus tertii* standing to bring claims on behalf of RSB clients who lack access to information about NFB services.  <u>See, e.g.</u>, <u>Powers v. Ohio</u>, 499 U.S. 400, 410-11 (1991) (the first criteria litigants must satisfy to bring actions on behalf of third parties is a showing that they themselves suffered an injury in fact, giving them a sufficiently concrete interest in the outcome of the dispute).

NFB alternatively argues that it has representational standing to bring the claims of its members.  A membership organization may sue on behalf of its members if three criteria are satisfied. Its members must have standing to sue, the interests it seeks to protect must be germane to its own purpose, and  neither the claim asserted nor the relief requested may demand the participation of the individual members.  <u>Hunt v. Washington Apple Advertising Comm'n</u>, 432 U.S. 333, 343 (1977).

---

[4]The partial dissent focuses on NFB's allegation that use by Missourians of the national job data base it runs in conjunction with the Department of Labor – Job Opportunities for the Bind (JOB) – decreased from eleven placements in the two years before September 1994, to one between April 1, 1995 and March 30, 1997.  NFB did not allege that prior placements were the result of RSB referrals, and the allegation that five fewer Missourians had been placed per year does not establish a concrete, particularized injury to the organization itself.  The deposition testimony of Marc Maurer indicated that NFB did not know how many JOB referrals were made through RSB either before or after the implementation of the new RSB policy, and Maurer acknowledged that nothing in the policy prevented NFB from conducting job fairs itself or distributing JOB information in Missouri.

NFB alleges that its members are harmed because, even though they presumably know about the services available from their own organization, the RSB policy prevents its counselors from discussing these services and materials with them. NFB has not alleged that any of its members actually have been injured in this way, however, and the only injuries alleged are hypothetical. Without a concrete present or future injury, the individual members would not have standing to sue. Valley Forge Christian College, 454 U.S. at 472. Since NFB has not alleged that any of its members have or will suffer an injury in fact, it does not have representational standing to bring Rehabilitation Act claims.

After considering all the bases on which NFB argues it is entitled to raise claims that state officials have violated their duties under the Rehabilitation Act, we conclude that it has not alleged facts sufficient to meet constitutional standing requirements. The district court did not err in dismissing the Rehabilitation Act claims.

## B.

NFB also argues the court erred by dismissing its First Amendment claims.[5] In its view RSB has created a forum for the distribution of literature and discussion of topics related to blindness. They argue the RSB policy denies it access to this forum and thus violates its First Amendment rights. The district court determined that NFB had alleged an injury in fact on this claim because it had pleaded that its First

---

[5]NFB's complaint also alleged violations of the Equal Protection clause. On appeal, however, it has not argued that the district court erred by finding that it had not made out an Equal Protection violation or challenged its conclusion that NFB had made no attempt to show that similarly situated groups are given access which it is denied. Because NFB has not briefed issues relating to the dismissal of its Equal Protection claim, that part of the appeal is considered abandoned. See Fed. R. App. P. 28(a)(4); Malone v. Vasquez, 138 F.3d 711, 716 (8th Cir.), cert. denied, 119 S.Ct. 384 (1998).

Amendment rights were chilled by the RSB policy and that NFB was the proper proponent of its own First Amendment claims.

A grant of summary judgment is reviewed de novo, Kiel v. Select Artificials, Inc.,169 F.3d 1131, 1134 (8th Cir. 1999) (en banc), and will be affirmed only if, viewing the facts in the light most favorable to the non-moving party, there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The challenged policy restricts the availability in RSB offices of written materials prepared by consumer groups such as NFB, and it restricts RSB counselors from discussing programs, materials, or services sponsored by such organizations.  It does not, however, completely cut off NFB's opportunity to reach RSB clients through the agency because RSB staff may ask clients whether they want to sign a release to obtain information from the consumer groups.  To the extent NFB's First Amendment claims rest on its inability to place its publications on RSB premises, the critical question is whether RSB operates a limited public forum.[6]  If it does, NFB might have a First Amendment right to participate in the forum.

---

[6]RSB believes it is also entitled to prevail under a nonpublic forum analysis, but we disagree.  Restrictions on speech in a nonpublic forum are permissible so long as they are "reasonable and 'not an effort to suppress expression merely because public officials oppose the speaker's view.'"  U.S. v. Kokinda, 497 U.S. 720, 730 (1990) (citation omitted).  The director testified that "the purpose of the RSB policy is to promote unfiltered, even-handed access to information about the consumer groups devoid of any appearance of pressure or favoritism."  NFB has not produced evidence sufficient to show the expressed intent was pretextual, and the policy cannot be said to focus on the content of the publications.  To pass constitutional muster, it need only be a reasonable limitation; it need not be the most reasonable.  Id.

A limited public forum can only be created "by intentionally opening a nontraditional forum for public discourse." Cornelius v. NAACP Legal Def. and Educ. Fund, Inc., 473 U.S. 788, 802 (1985) (citations omitted). A government agency may create one by designating a place of communication for use by the public at large, for use by certain speakers, or for the discussion of specific subjects. Forbes v. Arkansas Educ. Televison Comm'n, 93 F.3d 497, 503 (8th Cir. 1996), rev'd on other grounds, 118 S. Ct 1633 (1998). Yet, "[a] practice of allowing some speech activities on [government] property do[es] not add up to the dedication of [that forum] to speech activities." U.S. v. Kokinda, 497 U.S. 720, 730 (1990).

The primary purpose of RSB is to advance the Rehabilitation Act goal of providing vocational rehabilitation programs for individuals with disabilities so that they may "prepare for and engage in gainful employment," 29 U.S.C. § 720(2), and in fulfilling this mandate it necessarily makes a variety of information available to clients. RSB's own provision of information to clients and discussion of issues related to blindness cannot be characterized as the intentional opening by the agency of a forum for *public* discourse, however. See Cornelius, 473 U.S. at 802; see also Families Achieving Independence and Respect v. Nebraska Dept. of Soc. Servs., 111 F.3d 1408 (8th Cir. 1997) (en banc). NFB has not established that RSB has created a limited public forum in which it could have a First Amendment right to distribute its publications.

The main argument NFB attempts to raise under the First Amendment is based on a rather unique theory. NFB claims that the network of RSB counselors and teachers, established under the Rehabilitation Act, itself constitutes a limited public forum. It contends that but for the policy, many RSB counselors would distribute NFB

13

literature and discuss services available through NFB.[7]  The RSB policy closes a channel through which NFB's message could otherwise be communicated indirectly to members of the blind community.  Appellants have not cited any case in which such a loosely defined network of agency counselors dealing with clients has been found to be a forum for First Amendment purposes.  The cases it relies on involve restrictions on an organization's ability to convey its message directly.  See, e.g., Cornelius, 473 U.S. at 788 (plaintiffs sought to participate in charity drive); Police Dept. of Chicago v. Mosley, 408 U.S. 92 (1992) (plaintiffs sought to picket school); Forbes, 93 F.3d at 499 (plaintiff sought to participate in a televised debate).  The district court therefore did not err in granting summary judgment on NFB's First Amendment claims.

## III.

For the reasons discussed, appellants lacked standing to assert the claimed violations of the Rehabilitation Act and the district court did not err in granting summary judgment on their constitutional claims.  The judgment of the district court is therefore affirmed.

LOKEN, Circuit Judge, concurring in part and dissenting in part.

I join in Part II.B. of the court's opinion.  I also agree with the court's articulation of the law of standing in Part II.A.  But I cannot agree that the National Federation for the Blind (NFB) has failed to allege sufficient injury in fact to afford it standing to challenge RSB's alleged violation of the Rehabilitation Act.  Accordingly, I respectfully dissent in part.

---

[7]NFB does not appear to be attempting to assert the speech rights of the RSB counselors themselves which would of course raise standing issues we need not address.

In Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 263 (1977), the Supreme Court upheld the standing of a non-profit developer to challenge a municipality's refusal to rezone land for the construction of racially integrated housing, in part because the refusal prevented plaintiff from fulfilling its charitable mission. The Court also determined that non-economic injury is sufficient to confer standing in Sierra Club v. Morton, 405 U.S. 727, 734 (1972), United States v. SCRAP, 412 U.S. 669, 686 (1973), and Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982). In this case, NFB has alleged similar, specific non-economic injury. In its Amended Complaint, NFB alleged that RSB's policy prevented NFB "from communicating with the blind citizens of Missouri who are either unaware of [NFB] or are unaware of the existence of a particular program, service, education, information or resource offered by [NFB]." More specifically, NFB alleged that use of its Job Opportunities for the Blind program by Missourians has decreased by 90% as a result of the policy, an allegation that was sufficiently supported at this threshold stage of the lawsuit by the deposition testimony of Marc Maurer, President of NFB. Thus, I read the record on appeal as containing a sufficient showing that RSB's alleged violations of a federal statute have injured NFB in the fulfillment of its essential charitable mission. Although I take no position on the merits of NFB's Rehabilitation Act claims, I would not dismiss them for lack of standing.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

15