# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3903

_____

Tracie Park,

        Appellee,

    v.

Forest Service of the United
States of America,

        Appellant.

\* \* \* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the Western
District of Missouri.

_____

Submitted: January 10, 2000

Filed: March 3, 2000

_____

Before WOLLMAN, Chief Judge, and MORRIS SHEPPARD ARNOLD and MURPHY, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Tracie Park is a member of a group known as the "Rainbow Family," which holds periodic gatherings of its members in various national forests. Ms. Park brought a suit for injunctive relief in the district court claiming that the United States Forest Service employed an unconstitutional checkpoint on a forest road, that the checkpoint was targeted against her group, and that the Forest Service would continue to use

unlawful checkpoints against the Rainbow Family in the future.  The district court granted summary judgment in favor of Ms. Park, and enjoined the Forest Service from using certain types of checkpoints that target Rainbow Family gatherings.  The Forest Service appeals and we reverse.

I.

The Forest Service argues, among other things, that Ms. Park lacks standing to seek injunctive relief.  "Standing is, of course, a threshold issue in every case before a federal court:  If a plaintiff lacks standing, he or she cannot invoke its jurisdiction." *Arkansas Right to Life State Political Action Committee vs. Butler*, 146 F.3d 558, 560 (8th Cir. 1998), *cert. denied*, 119 S. Ct. 1041 (1999).  Before moving to the merits of the case, we consider first, therefore, whether Ms. Park had standing to seek injunctive relief.

The existence of standing is a determination of law that we review *de novo*.  *See National Federation of the Blind v. Cross*, 184 F.3d 973, 979 (8th Cir. 1999), *cert. denied*, 120 S. Ct. 533 (1999).  "Since [the elements of standing] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).  Under Fed. R. Civ. P. 56(c), summary judgment is proper only if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

To establish standing, Ms. Park must demonstrate that she has suffered an injury in fact, that her injury was caused by the conduct of the Forest Service, and that her injury is likely to be redressed by a favorable ruling from a federal court.  *See Lujan*, 504 U.S. at 560-61.  In the case of complaints for injunctive relief, the "injury in fact"

element of standing requires a showing that the plaintiff faces a threat of ongoing or future harm. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101-05, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983). "[I]t is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the 'threatened injury [is] "certainly impending." ' " *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 120 S. Ct. 693, 709 (2000), quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990), itself quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923), *reaff'd*, 263 U.S. 350 (1923).

In this case, Ms. Park maintained that she was subjected to an unconstitutional checkpoint while attending the 1996 annual gathering of the Rainbow Family, and she filed her complaint in the district court a few weeks after the conclusion of that gathering. The Forest Service does not deny that the checkpoint was impermissibly operated, but argues that Ms. Park has not made an adequate showing that she will be subjected to unconstitutional checkpoints in the future; the Forest Service therefore contends that Ms. Park does not have standing to seek injunctive relief. We agree.

The mere fact that the checkpoint used at the 1996 gathering was unconstitutional cannot alone give Ms. Park standing: "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974). At the time that Ms. Park filed her complaint for relief, the 1996 gathering had ended and the checkpoint was no longer being used. We are therefore not presented with a case in which the unlawful conduct is ongoing; instead, to have standing, Ms. Park must demonstrate " ' "a real, [and] immediate threat that [she] would again" suffer similar injury in the future.' " *Harmon v. City of Kansas City*, 197 F.3d 321, 327 (8th Cir. 1999), quoting *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995), itself quoting *Lyons*, 461 U.S. at 105.

In the discussion of standing in her appellate brief, Ms. Park argues that she has standing because she intends to continue attending Rainbow Family gatherings and because the Forest Service continues to target the Rainbow Family with unconstitutional checkpoints. The only evidence that she adduces for this latter assertion is an affidavit from another Rainbow Family member that claims that the Forest Service used checkpoints at Rainbow Family gatherings on certain occasions in 1997, 1998, and 1999.

We do not think, however, that the actual use of checkpoints in 1997, 1998, and 1999 is relevant on the issue of standing because all of these events occurred after Ms. Park filed her original complaint. We believe that it is Ms. Park's burden to show that, at the time she filed her suit in 1996, there was a real and immediate threat that she would again be subjected by the Forest Service to an unconstitutional checkpoint. We do not think that she may use evidence of what happened after the commencement of the suit to make this showing.

In *Lujan*, 504 U.S. at 568 (plurality opinion), the Supreme Court found that the plaintiffs lacked standing because, among other things, they could not demonstrate that their alleged injury was redressable. In so holding, *id.* at 568-69 (plurality opinion), a four-justice plurality rejected the argument that an authoritative ruling by the Court would have the ameliorative effect that the plaintiffs sought. The plurality stated that "standing is to be determined as of the commencement of the suit," *id.* at 571-72 n.5, and that at the commencement of the suit it could not have been foreseen that the suit would reach the Supreme Court, *see id.* at 571 n.5. It seems to us that if redressability may not be established by a development that occurs after the commencement of the litigation, neither may an injury-in-fact. *See also Perry v. Village of Arlington Heights*, 186 F.3d 826, 830 (7th Cir. 1999) ("[i]t is not enough for [the plaintiff] to attempt to satisfy the requirements of standing as the case progresses. The requirements of standing must be satisfied from the outset").

In its argument that Ms. Park lacked standing, the Forest Service also relied on events that took place after the commencement of this litigation. The Forest Service pointed to the 1998 adoption of new rules that supposedly eliminate the possibility that unconstitutional checkpoints will be used in the future, and argued that Ms. Park could not, therefore, have standing. For the reasons that we have already stated, however, the adoption of the 1998 rules is not relevant to the standing inquiry in this case. The adoption of these rules would be relevant only to a contention that Ms. Park's complaint has become moot. To carry the day on that contention, the Forest Service would have to "[bear] the formidable burden of showing that it is absolutely clear [that] the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 120 S. Ct. at 709. In any event, since we decide this case on standing, we do not reach the question of mootness.

## II.

Having found that allegations of improper checkpoints after the commencement of this suit are inapposite to the issue of standing, we turn to the record to see what other events, predating commencement of this suit, support Ms. Park's assertion of standing. Our analytical approach is similar to the one used by the Supreme Court in *Lyons*, 461 U.S. at 97-98, in which the plaintiff claimed to have been subjected to an unconstitutional chokehold during a traffic stop. The Court found that he did not have standing to seek injunctive relief because the possibility that he would be stopped again and, moreover, treated in a similar manner was simply too speculative. *Id.* at 105-07. The Court's measurement of the likelihood of future injury seemed to require two criteria: First, the probability that the plaintiff would be stopped again and, second, the probability that the officers would use a chokehold again.

It is undisputed that Ms. Park planned to attend, at the very least, the next annual gathering of the Rainbow People. We find the probability very high, therefore, that Ms. Park would, within one year of commencing this suit, attend a gathering of the Rainbow People, in the course of which she would visit a national forest and potentially

come into contact with the Forest Service. We note that an upcoming annual event is sufficiently temporally proximate to be considered an "immediate" threat and therefore to support standing for injunctive relief, *Adarand Constructors*, 515 U.S. at 211.

The key inquiry in the issue of standing in our case, however, focuses on the second criterion in the probability calculus, that is, the probability that the Forest Service will use an unconstitutional checkpoint at the next annual gathering. We think that among the relevant considerations in this regard are statements of future intent and patterns of past practice. *See Lyons*, 461 U.S. at 106 (identifying official police policy as an indicator of future police conduct), and *United States v. Articles of Drug*, 825 F.2d 1238, 1248 (8th Cir. 1987) (citing a "pattern of noncompliance" to justify injunctive relief).

There is no indication in the record in our case that the Forest Service maintained an official policy of using unlawful checkpoints against the Rainbow Family. Nor are we persuaded that the record could support a finding that the Forest Service harbored an unofficial animus against the Rainbow Family. We note first that there is no evidence that the Forest Service treated similarly situated groups differently from the Rainbow Family, partly because there were no similarly situated groups. The Forest Service presented an affidavit that the Rainbow Family's meetings were unique in their size: Whereas the largest gatherings in a national forest ordinarily number approximately 250 people, the annual meeting of the Rainbow Family draws over 15,000 people, which presents unique administrative and logistical concerns. The Rainbow Family does not contest this.

The Forest Service also presented affidavits stating that checkpoints were routinely used at much smaller gatherings (*i.e.*, 100-200 people), such as fraternity parties and large hunting groups. The Rainbow Family presented no evidence to contest this, either. Finally, although Ms. Park suggested in her deposition that the Forest Service was "overly enthusiastic" in its enforcement of the law at Rainbow

Family gatherings, she was not aware of any occasion on which a Forest Service officer turned a blind eye to similar violations committed by non-Rainbow Family members, at their own or any other gatherings.

Ms. Park also cited an unpublished opinion by a Texas district court from an earlier case between the Rainbow Family and the Forest Service in which the district court found that the Forest Service "acted with hostility to the Rainbow Family." *United States v. Rainbow Family*, No. L-88-68-CA (E.D. Tex. Apr. 14, 1989), at 27. We believe, however, that this opinion, which concerned a dispute that occurred eleven years ago over an unrelated permit policy, is insufficient evidence of a service-wide animus in 1996 that would make the use of an unconstitutional checkpoint in 1997 likely.

Nor are we persuaded by Ms. Park's claim, advanced in oral argument but not in her brief, that the Forest Service's inability to state the purpose for the 1996 checkpoint consistently indicates that the Forest Service harbors some hidden animus against the Rainbow People. Although it may be true that various Forest Service officers gave different explanations for the checkpoint (for example, some officers said that the checkpoint was for informational and resource conservation purposes, while others said that it was a drunk-driving checkpoint), we find it far more likely that this was the product of individual confusion rather than institutional animus.

## III.

Finally, we note that there is very little evidence of a "pattern of noncompliance," *Articles of Drug*, 825 F.2d at 1248, with the Constitution by the Forest Service. In her deposition, Ms. Park expressed some uncertainty as to when the Forest Service employed checkpoints in the past, but it is apparent that the Forest Service used checkpoints in some years but not others. Ms. Park provided almost no details about the operation of these prior checkpoints, and we are unable to conclude from her very limited account that those checkpoints were unconstitutional.

One Rainbow Family member stated in an affidavit that he saw checkpoints at Rainbow Family gatherings on three occasions prior to the 1996 national gathering. We note, however, that the affidavit claims only that the Forest Service operated one of these checkpoints, in 1993, and that other or unnamed entities operated the checkpoints on the other two occasions. As far as the 1993 checkpoint is concerned, even if that checkpoint was unconstitutionally operated, we are doubtful that that would be enough to establish a "pattern of noncompliance," *id.*

We believe, moreover, that there is insufficient evidence to establish that the 1993 checkpoint was unconstitutional. According to the affidavit, the checkpoint was operated on a forest road, in close proximity to the Rainbow Family gathering, and consisted of an identification and registration check. These assertions, however, taken as true, do not describe an unconstitutional checkpoint.

We do not believe that a checkpoint where officers ask for identification is illegal *per se*, nor do we believe that a checkpoint on a forest road is illegal *per se.  See Michigan Department of State Police v. Sitz*, 496 U.S. 444, 451-53 (1990). On this latter point we note in passing that although it may be true that the forest road in question ordinarily has little traffic, it is heavily traveled on the day of the gathering, and is therefore distinguishable from the " ' "seldom-traveled roads" ' " described in *Sitz*, 496 U.S. at 453, quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 558 (1976), itself quoting *United States v. Ortiz*, 422 U.S. 891, 894-95 (1975). Finally, we do not believe that a checkpoint that targets a uniquely disruptive event, such as the Rainbow Family's annual gathering, is illegal *per se*. Although it is possible that, when provided with evidence of the numbers of cars stopped and the number of arrests made, we would conclude that the 1993 checkpoint failed the test described in *Sitz*, 496 U.S. at 451-53, 455, the Rainbow Family has failed to produce any such evidence.

IV.

To summarize, we find that Ms. Park has failed to show that, at the commencement of the litigation, there was a significant probability that the Forest Service would use an unconstitutional checkpoint in the future. Therefore, we do not believe that the " 'threatened injury [was] "certainly impending," ' " *Friends of the Earth*, 120 S. Ct. at 709, quoting *Whitmore*, 495 U.S. at 158, itself quoting *Pennsylvania v. West Virginia*, 262 U.S. at 593, and we conclude that Ms. Park did not have standing to seek injunctive relief when she filed her complaint in 1996. In reaching this conclusion we are mindful that the Forest Service admitted to using an improper checkpoint in 1996, and that questionable checkpoints may have been used since that time. It is possible that Ms. Park would have standing to seek injunctive relief in an action commenced today, if these more recent checkpoints establish a pattern of wrongdoing by the Forest Service. It is our hope, however, that Ms. Park will not have to resort to legal action again to be free from future violations of her constitutional rights, and that the administrators of the Forest Service will ensure that the inappropriate conduct of 1996 is not repeated.

For the foregoing reasons the district court's award of summary judgment in favor of Ms. Park is reversed, and the district court's injunction against the Forest Service is vacated.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-9-