In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2705

Donald J. Sierakowski,

Plaintiff-Appellant,

v.

James E. Ryan, Attorney General of the State of
Illinois, in his official capacity, and John R.
Lumpkin, Director of the Illinois Department
of Public Health, in his official capacity,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 7088--James F. Holderman, Judge.

Argued April 3, 2000--Decided August 3, 2000

Before Flaum, Chief Judge, Bauer and Williams,
Circuit Judges.

Flaum, Chief Judge.  Plaintiff Donald J.
Sierakowski was tested for HIV without his
knowledge and consent. Pursuant to 42 U.S.C. sec.
1983 and 28 U.S.C. sec. 2201, Sierakowski sought
a declaration that the provision of the Illinois
AIDS Confidentiality Act codified as 410 ILCS
205/8(b)--which under certain circumstances
grants Illinois physicians discretion to test
patients for HIV without their knowledge or
consent--is invalid because it violates rights
secured by the Fourth and Fourteenth Amendments
to the United States Constitution. Sierakowski
further sought an injunction prohibiting
defendant John R. Lumpkin, Director of the
Illinois Department of Public Health, and his
agents from enforcing or otherwise effectuating
the state law provision./1 The district court
dismissed the suit, and then denied Sierakowski's
Rule 59(e) motion to amend the judgment, on
Eleventh Amendment and standing grounds. We
affirm the judgment of the district court.

Background

	The Illinois AIDS Confidentiality Act provides
that "[n]o person may order an HIV test without

first receiving the written informed consent of the subject of the test or the subject's legally authorized representative." 410 ILCS 305/4. Section 8 of the Act, however, states in relevant part:

Notwithstanding the provisions of Sections 4 and 5 of this Act, written informed consent, information and counseling are not required for the performance of an HIV test . . . (b) when in the judgment of the physician, such testing is medically indicated to provide appropriate diagnosis and treatment to the subject of the test, provided that the subject of the test has otherwise provided his or her consent to such physician for medical treatment.

410 ILCS 305/8.

This Illinois Aids Confidentiality Act also generally forbids disclosure of "the identity of any person upon whom a test is performed, or the results of such a test in a manner which permits identification of the subject of the test," 410 ILCS 305/9, but allows such disclosure to a list of enumerated persons, including the Department of Public Health, in accordance with reporting rules. 410 ILCS 305/9(d). The Illinois Sexually Transmissible Disease Control Act requires that laboratories performing HIV tests report any positive results to the Illinois Department of Public Health within two weeks of the test. 410 ILCS 325/4; 77 Ill. Adm. Code. sec. 693.20(a)(1)-(2).

Sierakowski suffers from a seizure disorder, and the medication prescribed to control the disorder can affect liver function. Sierakowski must therefore visit a physician every three months for testing to ensure that his liver is functioning properly and to monitor levels of seizure medication present in his blood.

In November 1996, Sierakowski made an office visit to his regular physician, Dr. Coleman Seskind. Sierakowski did not previously nor at that time provide Dr. Seskind or any other person with his consent, written or otherwise, to perform an HIV test. Dr. Seskind had Sierakowski admitted to a hospital for treatment, where, according to Sierakowski, he was asked by hospital personnel whether he would consent to an HIV test and he refused. During Sierakowski's next visit to Dr. Seskind the following week, Dr. Seskind disclosed that Sierakowski had been tested for HIV and that the test result was negative.

On November 5, 1998, Sierakowski filed a complaint against defendant Lumpkin, as Director

of the Illinois Department of Public Health, alleging that the continued enforcement and effectuation of section 8(b) of the Illinois AIDS Confidentiality Act violates his constitutional rights under the Fourth and Fourteenth Amendments. Invoking 42 U.S.C. sec. 1983 and 28 U.S.C. sec. 2201, Sierakowski sought a declaratory judgment that section 8(b) is unconstitutional and injunctive relief prohibiting the Director and his agents from enforcing or effectuating section 8(b).

Lumpkin moved to dismiss on the grounds that the Eleventh Amendment barred the action against him because he was not sufficiently involved in the enforcement and implementation of section 8(b) to be a proper defendant under the doctrine of Ex parte Young, 209 U.S. 123 (1908). The district court rejected this argument, but nevertheless dismissed the suit against him because plaintiff Sierakowski had not alleged an "ongoing or threatened violation of federal law" or "that he is likely to be tested again for AIDS without consent." This failure, the court held, required dismissal on both Eleventh Amendment and standing grounds.

Sierakowski filed a Rule 59(e) motion to alter or amend the judgment by granting him leave to file a proposed amended complaint, which added certain allegations against Lumpkin. The court denied the motion, holding that the allegations of the proposed amended complaint did not cure the defects of the original complaint.

Discussion

Article III standing requires that a plaintiff demonstrate three elements: (1) an "injury in fact"--an invasion of a legally recognized interest which is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal link between that injury and the defendant's action, such that the injury is fairly traceable to the action complained of; and (3) that a favorable decision will likely redress the injury. See Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc., 120 S.Ct. 693, 704 (2000); Wisconsin v. FERC, 192 F.3d 642, 646 (7th Cir. 1999). The district court held, among other things, that Sierakowski did not satisfy the injury-in-fact requirement because, even under the allegations laid out in his proposed amended complaint, his alleged injuries were too abstract and conjectural to give him standing to seek injunctive and declaratory relief. We agree with the district court's conclusion on this issue.

Although we recognize that there are

circumstances where the probability rather than certainty of future injury may support standing to challenge the constitutionality of a policy, see, e.g., Pennell v. City of San Jose, 485 U.S. 1 (1988) (holding that landlords had standing to challenge an ordinance's constitutionality where there was both a likelihood of enforcement and a concomitant probability that the landlords' rent would be reduced), the Supreme Court has made clear that in order to invoke Article III jurisdiction a plaintiff in search of prospective equitable relief must show a significant likelihood and immediacy of sustaining some direct injury. See Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 210-11 (1995); City of Los Angeles v. Lyons, 461 U.S. 95 (1983); see also Stewart v. McGinnis, 5 F.3d 1031, 1038-39 (7th Cir. 1993). In Lyons, the Supreme Court considered a civil rights action against the City of Los Angeles and several police officers, in which it was alleged that the officers had stopped the plaintiff for a routine traffic violation and then applied a chokehold without provocation. Among other things, the plaintiff sought an injunction against further use of the chokehold by police unless the suspect threatened deadly force. The Supreme Court held that Lyons lacked standing to seek injunctive relief because he could not show a real or immediate threat of future harm:

That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part. The additional allegation in the complaint that the police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force falls far short of the allegations that would be necessary to establish a case or controversy between these parties.

461 U.S. at 104.

In holding that Lyons lacked standing to seek injunctive relief, the Supreme Court relied on its prior decision in O'Shea v. Littleton, 414 U.S. 488 (1974), where a class of plaintiffs accused a magistrate and judge of discriminatory sentencing and sought to enjoin the constitutionally proscribed conduct. The O'Shea Court ordered the case dismissed because, although it was claimed that particular class members had actually suffered from the alleged

unconstitutional practices, there was no real and immediate threat that they would again be subjected to the improper sentencing procedures. See id. at 495-96. "Past exposure to illegal conduct," the Court explained, "does not in itself show a present case or controversy regarding injunctive relief . . . ." Id. at 495; see also Park v. Forest Service of the United States, 205 F.3d 1034 (8th Cir. 2000) (holding that association members lacked standing to sue the Forest Service for injunctive relief, because although the association alleged that the Service employed an unconstitutional automobile checkpoint targeted against the association, the association did not demonstrate a real and immediate threat that it would again be subjected to such a checkpoint); Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corp., 28 F.3d 1268 (D.C. Cir. 1994) (holding that black fair employment testers, who posed as job applicants and were denied referrals by the defendant employment agency, lacked standing to seek injunctive relief absent sufficient allegations that their rights would be violated by the agency in the future); Facio v. Jones, 929 F.2d 541 (10th Cir. 1991) (holding that a default judgment debtor lacked standing to challenge state procedural rules through a sec. 1983 suit for declaratory or injunctive relief absent showing a good chance of being subjected to those procedures in the future).

This Court has recently relied upon the reasoning in Lyons and O'Shea in holding that claims for injunctive relief resembling Sierakowski's fail to satisfy standing requirements. In Knox v. McGinnis, 998 F.2d 1405 (7th Cir. 1993), we held that a prisoner lacked standing to seek an injunction against future use of a particular restraining device on segregation prisoners. The prisoner, who had previously been subjected to the "black box" restraining device, brought a section 1983 action against state corrections officials alleging that use of the device violated the Eighth Amendment. We concluded that Lyons and O'Shea were controlling:

Like the plaintiffs in those cases, Knox cannot establish a real and immediate threat that he again will be subject to use of the black box. Although Stateville uses the black box on all segregation prisoners, the mere possibility that Knox may sometime in the future be returned to the segregation unit does not establish a real and immediate case or controversy.

Id. at 1413.

Similarly, in Robinson v. City of Chicago, 868 F.2d 959 (7th Cir. 1989), we held that arrestees

lacked standing to seek declaratory relief challenging a city police department's investigatory detention policy. Because it was not reasonably likely that the former arrestees would be arrested again, they could not establish a real threat of future injury sufficient to seek such prospective relief:

[A]s with the Lyons plaintiff, neither Richardson nor the Doulin plaintiffs can allege that it is reasonably likely that they will again encounter the police. Because the various plaintiffs' future conduct presumably will give the police no probable cause to arrest them, they cannot expect that they will encounter the police or, if they did, that the police would again detain them pending investigation or fingerprint clearance. Thus, even if the police were to continue to detain others for investigation, . . . the possibility that Richardson would suffer any injury as a result of that practice is too speculative.

Id. at 966 (citations omitted).

Like the plaintiffs in these cases, Sierakowski's prospects of future injury are purely speculative, and Sierakowski therefore lacks the requisite personal stake in the outcome of this litigation to establish standing to seek injunctive relief. Cf. Lyons, 461 U.S. at 111 ("Absent a sufficient likelihood that he will be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional."); see also Stewart, 5 F.3d at 1038-39. Sierakowski's proposed amended complaint alleges that he was tested previously for HIV without his consent and that proper health care requires that he visit a physician every three months for blood tests. Taken together, these allegations still do not establish that he would likely be tested again for HIV without his consent. By its very terms, the challenged statute authorizes unconsented testing based on "the judgment of the physician" as to whether "such testing is medically indicated to provide appropriate diagnosis and treatment to the subject of the test." 410 ILCS 305/8(b). There is no policy mandating testing, but instead section 8(b) leaves that decision in the hands of individual physicians, to be made on a case-by-case basis. The record provides no reason to believe that the conditions spelled out in the statute are likely to be present in Sierakowski's future visits, and the fact that Sierakowski must visit a physician more often than most people is not probative of whether that physician will deem HIV testing medically

indicated. Sierakowski thus finds himself in the same position as the plaintiff in Lyons.

To be sure, past wrongs, while not sufficient to confer standing for injunctive relief, may be evidence that future violations are likely to occur. See Lyons, 461 U.S. at 102; O'Shea, 414 U.S. at 496. But in this case the allegations regarding past conduct still leave us with bare speculation about what testing Sierakowski's doctors will later decide to conduct. Perhaps that Sierakowski was tested previously for HIV suggests that doctors will likely judge it useful to test him again. Or, then again, perhaps that his previous test came out negative makes it unlikely. There is nothing in the proposed amended complaint or the record below to suggest that future injury is likely and that Sierakowski faces an immediate threat of harm. Accordingly, the district court properly dismissed this suit and denied the post-judgment motion seeking permission to file an amended complaint./2

Conclusion

For the reasons stated herein, we AFFIRM the decision of the district court.

/1 Sierakowski also originally named Illinois Attorney General James E. Ryan as a defendant in his official capacity, but he does not appeal the dismissal of defendant Ryan from the suit.

/2 Because we conclude that Sierakowski lacks standing to seek injunctive and declaratory relief, we decline to reach the issue of whether the Eleventh Amendment bars this suit.