# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2294

_____

| | | |
|---|---|---|
| Michelle L. Steger; Patrick H. Burch; | * | |
| Debbie L. Lane; Mark J. Woods; | * | |
| Matthew C. Young, | * | |
| | * | |
| Appellants, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Franco, Inc., an administratively | * | Eastern District of Missouri. |
| dissolved Missouri corporation, | * | |
| | * | |
| Appellee. | * | |

----------------------------------

| | |
|---|---|
| United States of America, | * |
| | * |
| Amicus on Behalf of Appellants. | * |

_____

Submitted: February 14, 2000

Filed: October 3, 2000

_____

Before RICHARD S. ARNOLD, HEANEY, and LOKEN, Circuit Judges.

_____

HEANEY, Circuit Judge.

Michelle Steger, Deborah Lane, Matthew Young, Mark Woods and Patrick Burch[1] sued defendant Franco, Inc. to compel Franco to bring one of its buildings, the Clayton Central Building (CCB), into compliance with the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213 (2000). The district court dismissed plaintiffs' claims for lack of standing, and they appeal. We affirm the district court's ruling as to Steger, Lane, Woods and Young, but reverse as to Burch.

## BACKGROUND

The focus of plaintiffs' lawsuit is the CCB, located in the St. Louis suburb of Clayton, Missouri. The building provides office and retail space for health care providers and other retail and service establishments. In September 1996, plaintiffs sued Franco to bring the CCB into ADA compliance.

The district court held a preliminary-injunction hearing in June 1998, where three of the five plaintiffs testified. Steger, a Kirkwood, Missouri resident, is partially paralyzed and uses a wheelchair. She testified that although she visits various government buildings, private businesses, and restaurants in Clayton "a lot," she did not remember ever entering the CCB and did not know whether the building was accessible to her at the time this lawsuit was filed. (Tr. at 14.)

Young resides in Oakland, Missouri and also uses a wheelchair. Young testified that he occasionally patronizes Clayton's businesses. At the time suit was filed, he had never been in the CCB and had no personal knowledge whether it was accessible to him. However, in 1997, Young visited a retail brokerage firm with a storefront office in the CCB, but never entered the building's common area.

---

[1]The district court docket sheet mistakenly names Patrick Burch as Richard H. Burch.

Plaintiff Burch is blind. He resides in another St. Louis suburb, but testified that he frequently visits government offices and private businesses in Clayton as a sales and marketing employee for the St. Louis Lighthouse for the Blind. In July 1996, Burch dined at the Tuscany Coffee Shop, a storefront café in the CCB. Before leaving the café, Burch entered the CCB's common area to use the first floor men's restroom. He asked for and was given directions to the restroom, but was unable to locate it because the restroom was not marked with raised lettering, braille, or other signage that would identify it to a blind person. He has not reentered the building since then.

Also testifying at the hearing was plaintiffs' expert witness, architect Gina Hilberry. Hilberry reported on numerous structural barriers within the CCB that she concluded violated the ADA. She noted, however, that at the time she toured the CCB, some eight months after the complaint was filed, the signage at the first-floor men's restroom was ADA-compliant.

At the close of plaintiffs' evidence, the defendant moved for judgment as a matter of law, arguing that plaintiffs lacked standing to maintain their claims. The district court dismissed the case on the ground that because neither Steger, Lane, Woods, nor Young had been in the CCB prior to filing suit, they failed to show sufficient injury to confer standing. The district court also dismissed Burch's claim, concluding that although he was injured, his specific injury had been redressed because the signage at the first-floor men's restroom currently complied with the ADA. Plaintiffs appeal.

## DISCUSSION

Title III of the ADA proscribes discrimination in places of public accommodation against persons with disabilities. See 42 U.S.C. § 12182(a). Discrimination includes "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is

3

readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). The ADA grants a private right of action for injunctive relief to, inter alia, "any person who is being subjected to discrimination on the basis of disability." 42 U.S.C. § 12188(a)(1).

We review de novo the district court's determination that plaintiffs lacked standing to seek injunctive relief under the ADA. See Park v. Forest Serv., 205 F.3d 1034, 1036 (8th Cir. 2000). In so doing, we accept as true all material averments in the complaint and construe them in favor of the plaintiff. See Warth v. Seldin, 422 U.S. 490, 502 (1975). Because standing is determined as of the lawsuit's commencement, we consider the facts as they existed at that time. See Park, 205 F.3d at 1038.

Federal jurisdiction is limited by Article III, § 2, of the U.S. Constitution to actual cases and controversies. Therefore, the plaintiff's standing to sue "is the threshold question in every federal case, determining the power of the court to entertain the suit." Warth, 422 U.S. at 498. To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an "injury-in-fact," (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Only the first and last elements are at issue in this case.

I.    Injury-in-Fact

An injury-in-fact is a harm that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Id. (internal quotations omitted). The plaintiff must show that he or she "sustained or is immediately in danger of sustaining some direct injury as the result of the challenged . . . conduct and [that] the injury or threat of injury [is] both real and immediate . . . ." City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (internal quotations omitted). Although plaintiffs need not engage in the "futile gesture" of visiting a building containing known barriers that the owner has no intention of remedying, see 42 U.S.C. § 12188(a)(1), they must at least prove

4

knowledge of the barriers and that they would visit the building in the imminent future but for those barriers. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 120 S. Ct. 693, 704-06 (2000) (noting proof that environmental plaintiffs would use waterway for recreational purposes but for polluted condition is sufficient to show injury-in-fact). Intent to return to the place of injury "some day" is insufficient. Lujan, 504 U.S. at 564.

Steger, Lane, Woods, and Young argue that even though they have not been denied access to the CCB, they have been injured nonetheless because they are disabled and may enter the building in the future. Neither Lane nor Woods testified at the preliminary injunction hearing, and no evidence was presented regarding their knowledge of the building's barriers or their likelihood to visit the building in the imminent future. Steger testified that she could not remember ever being in the CCB and did not know whether the building was accessible to her. She presented no evidence that she intended to enter the building in the future. Consequently, neither Steger, Lane, nor Woods suffered injury, and the district court correctly dismissed their claims.

Young argues that because he visited the retail brokerage firm in the CCB after the complaint was filed, he has shown an imminent threat of future injury. As noted above, however, standing is based on the facts as they existed at the time the lawsuit was filed. See Park, 205 F.3d at 1037. At that time, Young had not been in the CCB and testified that he did not know whether the building was ADA-compliant. He also presented no evidence indicating whether, at the time of filing, he had a need or intent to access the building in the future. Young is thus in the same position as plaintiffs above, and the district court correctly dismissed his claim.

Finally, we turn to Burch. Unlike his fellow plaintiffs, Burch entered the CCB before commencing this lawsuit. While dining at the Tuscany Coffee Shop, Burch entered the CCB's common area to access the men's restroom, but was unable to do so

5

because the restroom's signage was not ADA-compliant. The district court correctly concluded that Burch indeed was injured.

## II.    Redressability

Though it ruled that Burch demonstrated injury, the district court nevertheless dismissed his claim on the ground that his injury had been redressed. For an injury to be redressable, judicial action must be likely to remedy the harm and cannot be merely speculative. See Lujan, 504 U.S. at 560. Burch contends the district court erred because numerous ADA violations, both related and unrelated to blind persons, still exist in the CCB. Franco counters that Burch's injury is limited solely to the first floor men's restroom, and that because the signage at the restroom currently complies with the ADA, judicial action will have no effect.

Burch essentially argues that he has standing to seek relief for all ADA violations in the CCB, including those unrelated to his disability. We cannot agree. To meet the injury-in-fact requirement, "the party seeking review [must] be himself among the injured." Id. Burch is not "among the injured" with regard to ADA violations in the building that do not affect the blind, and thus granting him standing to seek relief on behalf of all disabled individuals would expand the standing doctrine beyond the limits of Article III. See, e.g., Lewis v. Casey, 518 U.S. 343, 358 & n.6 (1996) (considering only remedies that would redress limitation experienced by plaintiff).

On the other hand, the redressability of Burch's injury is not restricted to the signage at the first-floor men's restroom as Franco contends. Although Burch was injured by Franco's failure to employ ADA-compliant signage, Hilberry testified that the building contains other violations that could injure blind persons. They include numerous doors without raised-letter signs; signs mounted incorrectly; an elevator that lacks audible signals and closes while people are in the doorway; stairs lacking proper handrails; tile flooring which does not meet slip-resistant standards; and a drinking

fountain that obstructs a hallway. Hilberry testified that many of these barriers could be removed with relatively little effort or cost.

Burch need not encounter all of these barriers to obtain effective relief. See, e.g., Independent Living Resources v. Oregon Arena Corp., 982 F. Supp. 698, 762 (D. Or. 1997) (ordering injunctive relief for entire arena although it "is unlikely that any individual plaintiff will ever sit in each of the seats in the area, or use each of the restrooms, or attempt to reach each of the ketchup dispensers"). The effect of such a rule would be piecemeal compliance. To compel a building's ADA compliance, numerous blind plaintiffs, each injured by a different barrier, would have to seek injunctive relief as to the particular barrier encountered until all barriers had been removed. This not only would be inefficient, but impractical.

Moreover, the ADA does not support such a narrow construction. The statute provides that where a defendant fails to remove barriers in existing facilities and removal is "readily achievable," 42 U.S.C. § 12182(b)(2)(a)(iv), injunctive relief is mandated to "make such facilities readily accessible to and usable by individuals with disabilities . . . ," 42 U.S.C. § 12188(a)(2). Accordingly, injunctive relief is encouraged where compliance is readily achievable, which Hilberry testified is the case here.

Congress intended that the ADA serve as a "clear and comprehensive national mandate" to eliminate discrimination against disabled individuals. 42 U.S.C. § 12101(b)(1). It envisioned "clear, strong, consistent, enforceable standards addressing discrimination against [disabled] individuals." Id. at § 12101(b)(2). Further, the ADA is a remedial statute, see Webb v. Garelick Mfg. Co., 94 F.3d 484, 487 (8th Cir. 1996), and should be broadly construed to effectuate its purpose, see Tcherepnin v. Knight, 389 U.S. 332, 336 (1967). Hence, our analysis of Article III standing, informed by the ADA's language and policy, leads us to conclude that Burch has standing to seek relief for any ADA violations in the CCB affecting his specific disability.

7

**CONCLUSION**

For the reasons stated above, we affirm the district court's decision dismissing the claims of plaintiffs Steger, Lane, Woods, and Young, and reverse as to plaintiff Burch. We remand for proceedings consistent with this opinion.

LOKEN, Circuit Judge, concurring in part and dissenting in part.

The ADA grants a private right of action for injunctive relief "to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter." 42 U.S.C. § 12188(a)(1). I agree with the court that plaintiffs Steger, Young, Woods, and Lane lack standing to seek injunctive relief against any alleged ADA violations in the Clayton Central Building. At the preliminary injunction hearing, none of these plaintiffs offered any evidence that he or she had ever been in the building, knew of conditions in the building, or would visit the building in the immediate future. Thus, they failed to prove injury in fact -- that they are "among the injured." Lujan v. Defenders of Wildlife, 504 U.S. 555, 563 (1992). They also failed to demonstrate the real and immediate threat of future harm that is essential for standing to seek an injunction. See City of Los Angeles v. Lyons, 461 U.S. 95, 101-05 (1983).

I further agree that plaintiff Burch suffered an ADA injury when he stopped at the coffee shop in the Clayton Central Building in July 1996 and could not find the first floor men's restroom because the restroom door was not marked with raised lettering, braille, or other signage that would help a blind person identify it. To seek injunctive relief, Burch should have made a stronger showing that he would likely use the Building in the immediate future if this barrier is remedied, but I agree with the district court that his showing of injury-in-fact at the preliminary injunction hearing was sufficient, at least for this relatively early stage in the litigation. "Past wrongs [a]re evidence bearing on whether there is a real and immediate threat of repeated injury." Lyons, 461 U.S. at 102 (quotation omitted).

8

However, I cannot agree that Burch has standing to seek injunctive relief against alleged ADA violations affecting blind persons who might visit areas above the first floor of the Building. As to these areas, Burch is like plaintiffs Steger, Young, Woods, and Lane. He has never been there, he has no knowledge of conditions there, and he has no plans to go there in the future.

The requirement of actual injury does more than assure a live controversy between adverse parties. "[T]he discrete factual context within which the concrete injury occurred or is threatened insures the framing of relief no broader than required by the precise facts to which the court's ruling would be applied." Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 222 (1974). Therefore, "[t]he remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." Lewis v. Casey, 518 U.S. 343, 357 (1996). Here, the injury-producing inadequacy was the absence of signs identifying the first-floor bathroom to a blind person. Any injunctive relief must be limited to remedying that inadequacy. As the Supreme Court recently admonished, "[s]tanding is not dispensed in gross." Friends of the Earth, Inc. v. Laidlaw Environmental Serv., Inc., 120 S.Ct. 693, 706 (2000) (quotation omitted).

The court declines to apply this principle because it would result in "piecemeal compliance," a result the court deems "inefficient" and "impractical." But the Supreme Court has consistently refused to relax its principles of Article III standing "for the sake of convenience and efficiency." Raines v. Byrd, 521 U.S. 811, 820 (1997). Nor is it relevant in this regard that the ADA is a "remedial statute." The Court has consistently applied its rigorous standing principles to environmental and conservation laws – paradigmatic examples of remedial statutes. See Laidlaw, 120 S. Ct. at 703-04 (Clean Water Act); Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 102-04 (1998) (Emergency Planning and Community Right-to-Know Act); Lujan, 504 U.S. at 559-62 (Endangered Species Act).

The court's expansive view of standing in this case stands in stark contrast to concerns expressed in the legislative history *by ADA supporters* who feared that the statute would lead to an explosion of litigation, inflicting crippling uncertainties and costs on the small businesses that must remove architectural and communications barriers from existing buildings, "where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). For example, in the Senate debates, several Senators worried that the grant of a private right of action, with an award of attorney's fees if successful, would result in excessive and excessively costly litigation. See 135 CONG. REC. S10754-63 (daily ed. Sept. 7, 1989). Senator Dale Bumpers observed that the term "readily achievable" is an unknown term of art and would therefore prove to be "like the term beauty. Beauty is in the eye of the beholder and readily achievable means [w]hat some judge says it means?" Id. at S10760-61. Responding to these concerns, Senator Tom Harkin, the ADA's chief Senate sponsor, predicted:

> MR. HARKIN. I think the instances in which, practically speaking, instances in which cases could be brought for injunctive relief would be very few and will involve egregious cases of multiple types of discrimination, probably against more than one person with a disability.
>
> Suppose an individual with a disability goes into a place of public accommodation and is told he cannot come in or something, is that person going to go to court and get an injunction? No, they will just go someplace else. They will say, "Heck, we will not go back to that place of business again."

Id. at S10754. If the court's extraordinary disregard of traditional standing limitations becomes the judicial norm, the benign prediction of Senator Harkin will prove untrue, and the worst fears of Senator Bumpers will be realized. Lawyers and architectural experts will bring countless abstract disputes to federal court, and federal judges across the country will sit as all-powerful ADA building inspectors, dictating what structural renovations are "readily achievable" in particular buildings.

In my view, this portion of the court's decision violates Article III's standing requirement as construed by the Supreme Court. Accordingly, I respectfully dissent in part.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.