132 F.Supp.2d 780 (2001)
Teonie T. SMITH, et. al., Plaintiffs,
v.
ST. LOUIS HOUSING AUTHORITY, Defendant.
No. 4:99CV385SNL.
United States District Court, E.D. Missouri, Eastern Division.
February 28, 2001.
*781 Robert S. Bogard, Nannette A. Baker, Schlichter and Bogard, St. Louis, MO, Edward A. Miller, Peirce and Raimond, Pittsburgh, PA, R. Bruce Carlson, Specter and Specter, Pittsburgh, PA, for Teonie T. Smith.
Edward A. Miller, Peirce and Raimond, Pittsburgh, PA, R. Bruce Carlson, Specter and Specter, Pittsburgh, PA, for Neltha Brandon.
James C. Hetlage, Margaret M. Mooney, Kevin L. Fritz, Lashly and Baer, P.C., St. Louis, MO, for St. Louis Housing Authority.

MEMORANDUM
LIMBAUGH, Senior District Judge.
This matter is before the Court on the defendant's motion for summary judgment (# 82). Responsive pleadings have been filed. This cause of action is set for trial on the Court's trial docket of April 2, 2001.
It is unnecessary to recite the tortuous history of this litigation except it is suffice to say that currently before the Court is an amended complaint filed naming both Teonie Smith and Neltha Brandon as the party plaintiffs. They contend that their minor children have been exposed to lead paint while residing in Section 8 housing[1] and have been injured. They fault the defendant for failing to make proper inspections for lead paint and to promptly require "the proper and safe treatment of said conditions when found." In their complaint, they seek injunctive relief requiring defendant "to comply with all applicable federal regulations concerning the inspection of all dwelling units that are part of the Section 8 program it administers". They also bring this action on behalf of others similarly situated and present themselves as representatives of a class "consisting of all families with a child or children under the age of six who presently reside, or in the future will reside in dwellings constructed prior to 1978 that are subject to lead-based paint performance requirement set forth at 24 C.F.R. § 982.401(j) and that are part of or subject to the Section 8 program administered by SLHA."[2]
The facts essential to the resolution of this summary judgment motion are as follows:
Defendant SLHA participates in the Section 8 program as governed by HUD. The Section 8 program provides for low-cost rental housing to qualified low-income families. The Section 8 housing program is to make available decent, safe and sanitary housing to such families. In order to effectively provide such housing, regulations *782 exist which govern the local public housing authority's administration of the program. These regulations include Housing Quality Standards (HQS) which each Section 8 unit must meet. HUD requires that Section 8 units be inspected initially, annually, and upon request in accordance with HQS, including inspection for lead paint.
From July 1991 to July 1997 plaintiff Smith lived in a Section 8 rental unit located at 2117A Bremen. During this tenancy, her son Brandon Watson was born (DOB: September 17, 1993). In December 1996, Brandon was tested for leadpaint poisoning. He was found to have a blood lead level of 32 mg/dl. This constitutes an "elevated blood lead level" (EBL) under the pertinent HUD regulations.[3] In March 1997, Brandon's blood lead level had dropped to 14 mg/dl. In July 1997 Ms. Smith and her family moved out of the Bremen unit and into a non-Section 8 housing unit. The last available test result on Brandon's blood lead level shows that in June 1998 his blood lead level had fallen again to 11 mg/dl. A blood lead level of 11 mg/dl does not constitute an EBL under the applicable HUD regulations for Section 8 housing.[4]
Plaintiff Neltha Brandon has been a Section 8 tenant since September 1996. She has several children, including Darryl, Jr. (DOB: September 24, 1995). In February 1999 Darryl was tested for leadpaint poisoning. He had an elevated blood lead level of 47 mg/dl. Also, in February 1999 the family moved to a new Section 8 rental unit located at 4044 N. 9th St. The unit was inspected for lead hazards and found to be in satisfactory compliance. In August 1999, Darryl was again tested for lead-paint poisoning and his blood lead level was found to be 10 mg/dl. A blood lead level of 10 mg/dl does not constitute an EBL under the applicable HUD regulations for Section 8 housing.
On March 11, 1999 this lawsuit was commenced with only Teonie Smith as the named plaintiff. On July 28, 2000 the original complaint in this lawsuit was amended to add Neltha Brandon as a named plaintiff.
Defendant asserts that the plaintiffs' lack standing to sue for injunctive relief. It avers that since neither plaintiff presently lives nor did live in a Section 8 unit with unacceptable levels of lead paint when this action was filed, they lack standing to bring this action. Defendant further avers that standing is lacking because neither of the minor children presently have or did have elevated blood lead levels (EBL), as defined under the applicable HUD regulations, when this lawsuit was filed. Furthermore, defendant avers that HUD regulations require inspections (which defendant avers that it did carry out) but that the responsibility for treating lead paint is on the landlord/owner of the real property, not the defendant. Finally, the defendant contends that the Lead-Based Paint Poisoning Prevention Act (LPPPA), 42 U.S.C. §§ 4821-4846, does not provide for a private cause of action.
The plaintiffs entirely skirt the issue of standing and instead argue the merits of their allegations regarding improper and superficial inspections. They simply contend that since their former units had lead paint and their children allegedly were injured by it, they have standing now to pursue injunctive relief. They further contend that they have standing because even if their children no longer have EBL, they still suffer the long-term effects. In support of this "medical evidence", plaintiffs' counsel submits his affidavit in which he argues with the defendant's "interpretations" of certain HUD regulations, and then states that "in other similar litigation" he has used the expert testimony of a Dr. John Rosen regarding long-term effects *783 of lead-paint poisoning. He further states that Dr. Rosen has been retained as a consultant and could not file his own affidavit because he is out of the country.[5] Finally, in one sentence in the last footnote of their reply (Footnote # 27), plaintiffs state that Smith has standing because she may be a Section 8 tenant in the future, "and that the conduct at issue in this case falls within the exception to the standing doctrine relating to conduct by the defendant which is `capable of repetition, yet evading review'".[6]
Federal jurisdiction is limited by Article III, § 2 of the United States Constitution to actual cases and controversies. This "case or controversy" limitation essentially requires a plaintiff to have standing to bring the action in federal court, and that the dispute is not moot. In order to meet Article III's standing requirement, a plaintiff must show 1) that s/he suffered an "injury-in-fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; 2) a causal connection between the injury and the challenged action of the defendant; and 3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Environmental Services, 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610; Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir.2000); Park v. Forest Service of the United States, 205 F.3d 1034, 1037 (8th Cir.2000). It is the plaintiff's burden to establish each and every element of standing. "Since [the elements of standing] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of the evidence required at the successive stages of the litigation." Lujan v. Defenders of Wildlife, 504 U.S. at 561, 112 S.Ct. 2130; Park, at 1037 (quoting Lujan). Furthermore, a reviewing court must determine standing based upon the facts existing at the time the lawsuit is filed. Steger, at 892-93; Park, at 1038. Thus, at the summary judgment stage, a plaintiff must make a "factual showing of perceptible harm" as those facts exist at the time of the commencement of the lawsuit. Lujan, 504 U.S. at 566, 112 S.Ct. 2130. In the present case, only the first and last elements are at issue.
*784 An "injury-in-fact" is a harm that is "concrete and particularized" and "actual or imminent" and not "conjectural or hypothetical". "The plaintiff must show that he or she `sustained or is immediately in danger of sustaining some direct injury as the result of the challenged ... conduct and [that] the injury or threat of injury [is] both real and immediate ...'" Steger, at 892 quoting City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)(internal quotations omitted). More specifically, in complaints seeking injunctive relief, the "injury-in-fact" element requires the plaintiff to show that s/he faces a threat of ongoing or future harm. Park, at 1037 citing City of Los Angeles v. Lyons, 461 U.S. at 101-05, 103 S.Ct. 1660.
In this case, neither plaintiff can show such a threat. At the time of the commencement of this lawsuit, plaintiff Smith was not a Section 8 tenant and her son, Brandon, no longer tested at an elevated blood lead level pursuant to the applicable HUD regulations. The fact that she had been a Section 8 tenant and allegedly her son was exposed to lead-paint while residing in a Section 8 housing unit cannot alone give her standing. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." Park, at 1037 quoting O'Shea v. Littleton, 414 U.S. 488, 495-96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Plaintiff Smith has presented no evidence to show that she is facing a threat of ongoing or future harm with respect to the alleged improper inspections. She has presented no evidence of that her son continues to suffer with an EBL condition due to her residential status, especially since she is not a Section 8 tenant (and more importantly, was not a Section 8 tenant when the lawsuit was filed). The fact that she may one day be a Section 8 tenant again is not enough to demonstrate standing. "Such `one day' intentions  without any description of concrete plans, or indeed even any specification of when the some day will be  do not support a finding of the `actual or imminent' injury that our cases require." Lujan, 504 U.S. at 564, 112 S.Ct. 2130.
As for plaintiff Brandon, she is a Section 8 tenant; however, the unit she now occupies (and was occupying when this lawsuit was filed) was inspected for lead paint hazards and found to be in compliance with the applicable HUD regulations. More importantly, at the time this lawsuit was filed, her son Darryl no longer tested at an elevated blood lead level. She has presented no evidence to the Court that her current Section 8 housing unit presents a threat of ongoing lead-paint exposure due to allegedly improper inspections. The only evidence before the Court shows that since occupying her present residence, her son's blood lead levels have gone down. Once again, plaintiff Brandon cannot establish standing based upon a past exposure to lead paint that no longer exists. Once again, she also cannot establish standing based upon a vague assertion that some day she may again move into a Section 8 housing unit that has not been properly inspected for lead paint hazards.
Besides failing to demonstrate an injury-in-fact, the plaintiffs have failed to demonstrate redressability. In order for an injury to be redressable, it must be more than merely speculative that the relief requested will remedy the harm to the plaintiff. Steger, at 893; Hall v. Lhaco, 140 F.3d 1190, 1196 (8th Cir.1998). The plaintiffs request injunctive relief relating to inspections for leadpaint hazards by the defendant. Plaintiff Smith is no longer a Section 8 tenant, thus the regulations pertaining to lead-paint inspections no longer apply to her. The requested injunctive relief simply won't affect her or her son given their present living situation. See, Hall, at 1197 (since defendant no longer acted as ERISA administrator, injunctive relief sought against it not redressable). Even though plaintiff Brandon is a Section *785 8 tenant, her present residence has been inspected and certified as being in compliance with applicable HUD regulations, and her son's blood lead levels are not considered elevated by the applicable HUD regulations. Any injunctive relief granted would not affect her or her son given their present living situation. Hall, supra.
Since the plaintiffs lack standing to bring this action, there is no need for the Court to address the defendant's remaining grounds for summary judgment.[7]
To summarize, the Court finds that, at the commencement of this litigation, plaintiffs Smith and Brandon (nor their respective sons) had not sustained nor were immediately in danger of sustaining a harm due to the alleged improper inspections and enforcement of applicable HUD regulations regarding lead-paint, and that any allegedly threatened injury was not certainly impending; thus, they did not have standing to seek injunctive relief when this lawsuit was filed. In light of the fact that no material issues of fact exist as to the plaintiffs' lack of standing, defendant is entitled to summary judgment.
NOTES
[1] Section 8 of the Housing Act of 1937, 42 U.S.C. § 1437 et. seq., provides for low-cost rental housing to qualified low-income families. The Section 8 program is highly regulated and generally governed by the Department of Housing and Urban Development (HUD); however, it is administered locally by the local public housing authority (as in this case, defendant St. Louis Housing Authority).
[2] Pending before this Court is a separate supplemental motion for class certification (# 67).
[3] There appears to be no dispute that this reading also constitutes an elevated blood lead level under relevant medical standards.
[4] 24 C.F.R. § 982.401(j)(2)
[5] Attached to the affidavit is a "Motion pursuant to Federal Rule of Civil Procedure 56(f)". Rule 56(f) allows for a party to request an extension of time, before the Court rules on a pending summary judgment motion, to conduct additional discovery or secure relevant affidavits in order to present facts essential to the party's position in opposition to the summary judgment motion. In the instant motion, plaintiffs' counsel fails to request any action by the Court; he simply sets forth a "medical opinion" which he believes counters the defendant's "interpretation" of certain HUD regulations. The Rule 56 motion is improper; as well as his affidavit. Both will be stricken from the record.
[6] In support of this contention, the plaintiffs cite Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). However, the exception they quote is not an exception to the standing doctrine, but rather the mootness doctrine. The United States Supreme Court has made it very clear that standing and mootness, although related, require significantly different inquiries. Friends of the Earth, Inc. v. Laidlaw Environmental Services, 528 U.S. 167, 180, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Whereas an exception to mootness exists if the defendant's allegedly unlawful activity is "capable of repetition, yet evading review", "[s]tanding admits of no similar exception; if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum." Friends of the Earth, 528 U.S. at 191, 120 S.Ct. 693 citing Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 109, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); see also, Minnesota Humane Society v. Clark, 184 F.3d 795, 797 (8th Cir.1999); Randolph v.. Rodgers, 170 F.3d 850, 856 n. 7 (8th Cir.1999). Consequently, the plaintiffs' argument for application of the exception to the mootness doctrine is meritless.
[7] However, the Court does wish to briefly address the defendant's contention that the plaintiffs do not have a private right of action pursuant to the Lead-Based Paint Poisoning Prevention Act (LBPPPA), 42 U.S.C. §§ 4821-22. Few courts have addressed the issue of whether claims arising under the LBPPPA can be asserted as 1) a § 1983 action; and/or 2) an implied private right of action. Those that have addressed this issue have found that the LBPPPA creates an enforceable right (by Section 8 tenants) that can be asserted under § 1983 and/or as an implied private right of action. See, Davis v. Philadelphia Housing Authority, 121 F.3d 92 (3rd Cir.1997); Aristil v. Housing Authority of the City of Tampa, Florida, 54 F.Supp.2d. 1289 (M.D.Fla.1999); Simmons v. Charleston Housing Authority, 881 F.Supp. 225 (S.D.W.Va.1995); Hurt v. Philadelphia Housing Authority, 806 F.Supp. 515 (E.D.Pa.1992); see also, Elliot v. Chicago Housing Authority, 1999 WL 519200 (N.D.Ill. 1999). This issue has not been addressed by the Eighth Circuit Court of Appeals nor does this Court believe by any district court within the Eighth Circuit. The Court addresses this issue only for informative purposes and does not render any dispositive opinion on this issue.