AMERICAN TRUCKING ASSOCIATIONS, INC., et al., Petitioners,

v.

INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,

National-American Wholesale Grocers' Association, RBC–Transport, Inc., Anheuser-Busch Companies, Carnaco Transport, Inc., National Industrial Transportation League, Intervenors.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Petitioner,

v.

INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.

Nos. 84–1008, 84–1032.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 25, 1984.
Decided Nov. 9, 1984.

Joseph E. Kolick, Jr., Washington, D.C., for petitioner Intern. Brotherhood of Teamsters in No. 84–1032. Robert J. Higgins, Joan M. Darby and Robert M. Baptiste, Washington, D.C., were on the brief, for petitioner. Angelo V. Arcadipane, Washington, D.C., entered an appearance for petitioner in No. 84–1032.

Kevin M. Williams, Washington, D.C., with whom Nelson J. Cooney and Kenneth E. Siegel, Washington, D.C., were on the brief, for petitioners American Trucking Ass'ns, Inc., et al. in No. 84–1008.

H. Glenn Scammel, Atty., I.C.C., Washington, D.C., with whom J. Paul McGrath, Associate Atty. Gen., John Broadley, Gen. Counsel, Henri F. Rush, Associate Gen. Counsel, I.C.C., and Robert B. Nicholson and Edward T. Hand, Attys., Dept. of Justice, Washington, D.C., were on the brief, for respondents in Nos. 84–1008 and 84–1032.

John F. Donelan, Frederic L. Wood and Richard D. Fortin, Washington, D.C., were on the brief, for intervenor Nat. Indust. Transp. League in No. 84–1008.

William H. Borghesani, Jr., Michael F. Morrone and Timothy Brown, Washington, D.C., were on the joint brief, for intervenors Anheuser-Busch Cos., Inc., et al. in No. 84–1008.

Before WILKEY, WALD, and SCALIA, Circuit Judges.

Opinion for the Court filed by Circuit Judge SCALIA.

SCALIA, Circuit Judge:

Petitioners in these consolidated cases challenge the validity of an Interstate Commerce Commission ("ICC") policy statement regarding applications for permits to operate as motor contract carriers. They claim the policy statement liberalizes the process in a fashion that is inconsistent with the statutory definition of contract carriage and with the statutory provisions governing permits for motor contract carriage. We do not reach those issues because we find that the case is not ripe for adjudication.

## I

The Motor Carrier Act of 1980, 94 Stat. 793 (1980) (codified at scattered sections of 49 U.S.C. (1982)), modified various aspects of the law governing contract carriage. Among other things it amended the definition of contract carriage to mean:

a person providing motor vehicle transportation of property for compensation under continuing agreements with one or more persons—

(i) by assigning motor vehicles for a continuing period of time for the exclusive use of each such person; or

(ii) designed to meet the distinct needs of each such person.

49 U.S.C. § 10102(14)(B) (1982).

In June 1983 the ICC asked for comments on issuance of contract carriage permits authorizing industry-wide service. 48

Fed.Reg. 24,397 (1983). In December 1983, it issued the policy statement challenged in these proceedings, Ex Parte No. MC–165 (Sub-No. 1), *Motor Contract Carriers of Property—Proposal to Allow Issuance of Permits Authorizing Industry-Wide Service*, 133 M.C.C. 298 (1983). The following month the American Trucking Associations, Inc., *et al.* ("ATA"), and the International Brotherhood of Teamsters filed separate petitions for this court's review under 28 U.S.C. §§ 2342(5), 2344 (1982). We consolidated the appeals.

The parties disagree sharply on the scope and meaning of the challenged policy statement. The ICC maintains that it does little more than give formal recognition to the possibility that industry-wide needs may be sufficiently distinct to qualify for contract carriage, a possibility recognized long before the 1980 Act in the limited context of banks and other entities needing armored vehicle service, *Armored Carrier Corporation Extension—Vermont*, 102 M.C.C. 411 (1966). *See* Brief for Respondents at 18–19. At oral argument, counsel for the ICC asserted that the only substantive feature of the policy statement is its provision that an applicant for a contract carriage permit need not provide shipper evidence to support its application—in his view an almost trivial change in evidentiary requirements.

Petitioners, on the other hand, view the policy statement as little short of revolutionary. At oral argument counsel for petitioners asserted that it amounts to allowing contract carriers to act as common carriers without being subject to the accompanying regulation. Petitioners argue that the policy statement's guidelines violate the statutory requirement that a contract carrier must either assign motor vehicles for the exclusive use of each shipper or provide service under a continuing agreement designed to meet the needs of each shipper. *See* Brief for ATA at 15–18. The ICC's announced standard, they say, "alters the requirement that each individual customer have distinct, specialized needs. The focus now is on just the opposite. It is on the common, generic transportation require-

ments." *Id.* at 17. To demonstrate that their own interpretation, rather than the respondents' is correct, they have appended to their briefs and discussed at oral argument a number of ICC decisions on permit applications issued after the policy statement, "as evidence and illustrations of the Commission's actual course of action and practices with respect to the challenged decision." Reply Brief for ATA at 15.

## II

We do not reach the merits of this dispute because a sound application of the doctrine of ripeness requires our abstention at this stage. As the Supreme Court noted in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–1516, 18 L.Ed.2d 681 (1967), the function of that doctrine in the context of reviewing agency action is to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Except to the extent, which we need not here determine, that the ripeness doctrine is part of the "case or controversy" requirement that determines the limits of our jurisdiction, *see Regional Rail Reorganization Act Cases*, 419 U.S. 102, 138, 95 S.Ct. 335, 355, 42 L.Ed.2d 320 (1974), the latter purpose—that of protecting the agency—can perhaps be disregarded when, as here, the affected agency itself has raised no objection to our involvement. The former purpose, however—that of avoiding our entanglement in abstract disagreements—serves the function not merely of protecting the agency, but of protecting ourselves in two respects: First, protecting us from adjudicating matters that are not sufficiently "fleshed out" that we may see the concrete effects and implications of what we do. And second, protecting us from adjudicating matters that in fact make no

difference and are a waste of our resources.

■ It is clear to us that the *Abbott Laboratories* test of ripeness is not met here. Even assuming the "fitness of the issues for judicial decision," there would not be any "hardship to the parties of withholding court consideration." *Abbott Laboratories, supra,* 387 U.S. at 149, 87 S.Ct. at 1515. The present policy statement neither imposes any obligation upon these petitioners, nor in any other respect has any impact upon them "felt immediately ... in conducting their day-to-day affairs." *Toilet Goods Association, Inc. v. Gardner,* 387 U.S. 158, 164, 87 S.Ct. 1520, 1524, 18 L.Ed.2d 697 (1967). At most the policy statement means that *future* actions of the Commission (its licensing of contract carriers) may be damaging to the petitioners—but that prospect in no way affects any action they must take or should take at the present time. In this respect, the case is indistinguishable from our recent dismissal on grounds of ripeness, at the urging of this very agency, in *South Carolina Electric & Gas Co. v. ICC,* 734 F.2d 1541 (D.C.Cir.1984).

We further conclude, moreover, that this is an appropriate case for invoking the doctrine on our own motion, since the nature of the prematurity is such that—whether or not constitutional limits are exceeded, and whether or not the agency objects—our own ability to decide intelligently, and our own confidence that we are expending our resources in resolving a dispute that has substance, are proximately affected. As our statement of the facts indicates, counsel for the Commission denies that the policy statement makes any change in preexisting practice except permitting non-shipper testimony to suffice for the granting of a contract carrier permit. The language is sufficiently ambiguous to render such an interpretation arguable, though not necessarily correct. All the petitioners can point to as assertedly clear evidence to the contrary is a number of licensing adjudications made pursuant to the policy statement, and attached as appendices to ATA's briefs. The demonstration is in a way self-defeating, since it convinces us that the concrete results of those adjudications, which we are not situated to examine intensively here, are highly pertinent if not utterly indispensable to resolution of the question before us—indeed resolution of whether any question other than a purely procedural one is before us at all. In these circumstances, we would be foolhardy to proceed, even absent objection, in a case that does not meet the *Abbott Laboratories* standard.

At oral argument, petitioners expressed concern that if the noxious growth of industry-wide licensing, which they think has been planted by the present policy statement, cannot be uprooted in the present context, it will have to be snipped away piecemeal in innumerable challenges to individual licenses for contract carriage. We have no such fear. To the extent that the policy statement represents a generalized principle that can be successfully attacked, the same principle will be reflected in individual adjudications, and can be addressed, root and branch, in that context. There is no more reason to believe that the Commission would ignore the ratio decidendi of judicial review of one of its adjudications than to believe that it would continue to apply the substance though not the words of the policy statement if we struck it down here. Petitioners further expressed concern that since, in order to contest a permit application, the protestant must be a carrier of the traffic for which the permit is sought, 49 U.S.C. § 10923(b)(4), no common carrier will be able to challenge industry-wide applications for contract carriage, which will not specify the particular shipper to be served. We doubt that the Commission would conclude that it had created such unchallengeable applications—and counsel for the Commission disavows such a result. But if it occurs, there would be an immediate remedy in this court.

We are aware that the Commission took the position, in the licensing application decisions attached to Petitioner ATA's Reply Brief, that a challenge on the basis of the illegality of industry-wide permits is a col-

lateral attack on the present policy statement and therefore will not be entertained. *E.g.*, No. MC–158179 (Sub-No. 3) *C & J Trucking, Inc., Extension—General Commodities Contract Service* (May 3, 1984). That position was specifically based, however, upon the fact that the policy statement was being reviewed by this court in the present case. Since that is no longer so, the Commission may change its view; and even if it does not, appeal of the issue to this court would not be affected. It goes without saying that we cannot permit the Commission to compel us to decide matters prematurely by simply refusing to consider them at later administrative stages.

In any case, the availability of a more appropriate medium for our review is demonstrated by the fact that a case involving a challenge to the policy here in dispute, but arising from the concrete application of that policy in a particular license proceeding, has already been argued before this court. *See Global Van Lines, Inc. v. ICC*, No. 83–1938 (D.C.Cir., argued May 1, 1984). Because the court finds, *sua sponte*, that this matter is not ripe for its consideration in its present context, the petition for review is

*Dismissed.*