# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 22, 2010          Decided February 4, 2011

No. 10-1053

FULL VALUE ADVISORS, LLC,
PETITIONER

v.

SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT

———

On Petition for Review of Orders
of the Securities & Exchange Commission

———

*Douglas R. Hirsch* argued the cause for petitioner. With him on the briefs was *Charles H. Dufresne*.

*Tracey A. Hardin*, Senior Counsel, Securities and Exchange Commission, argued the cause for respondent. With her on the brief were *David M. Becker*, General Counsel, *Jacob H. Stillman*, Solicitor, *Michael A. Conley*, Deputy Solicitor, and *Benjamin L. Schiffrin*, Senior Counsel.

Before: GINSBURG and BROWN, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

BROWN, *Circuit Judge*: Full Value Advisors, L.L.C. (Full Value or the Fund) is an institutional investment manager, as defined by the Securities and Exchange Act of 1934 (the Act), *see* 15 U.S.C. § 78m(f), subject to the disclosure requirements of section 13(f) of the Act,[1] which applies to institutional investment managers holding at least $100,000,000 in securities.[2] *See id.* § 78m(f)(1). As an "active investing" hedge fund, Full Value seeks to purchase stock in publicly traded companies and to influence management to take actions that increase stock price. In 2006, Full Value accumulated over $100,000,000 in securities holdings.

Full Value challenges the Act's disclosure requirements because they allegedly compel speech in violation of the First Amendment and constitute an uncompensated taking in violation of the Fifth Amendment. According to Full Value, public disclosure of its investment positions would drive up the price of a target company's stock, making it harder for Full Value to acquire a large enough stake in the company to pursue proxy contests and effect other changes in corporate management. Public disclosure is not the only injury Full

---

[1] The Dodd-Frank Wall Street Reform and Consumer Protection Act renumbered paragraphs (2), (3), (4), and (5) of Section 13(f) as paragraphs (3), (4), (5), and (6). Pub. L. No. 111-203, § 929X, 124 Stat. 1376, 1870 (2010). This opinion uses the pre-Dodd-Frank numbering.

[2] Section 13(f)(5)(A) defines "institutional investment manager" as "any person, other than a natural person, investing in or buying and selling securities for its own account, and any person exercising investment discretion with respect to the account of any other person." 15 U.S.C. § 78m(f)(5)(A).

Value anticipates. Full Value also claims disclosure to the Securities and Exchange Commission (the Commission) is unconstitutional. To the extent Full Value seeks to avoid public disclosure, its claims are not ripe. To the extent Full Value seeks to avoid disclosure to the Commission, its claims fail on the merits. Accordingly, we dismiss in part and deny in part Full Value's petition for review.

I

To comply with § 13(f) of the Act, institutional investment managers such as Full Value file quarterly reports—a "Form 13F Report"—with the Commission, disclosing, among other things, the names, shares, and fair market value of the securities over which the institutional managers exercise control. *See* 17 C.F.R. § 240.13f-1(a)(1) (requiring quarterly disclosure on Form 13F); 15 U.S.C. § 78m(f)(1) (2010) (delineating disclosure requirements).

The Commission must make 13F information publicly available unless either of two exemptions applies. First, under paragraph 13(f)(2), "[t]he Commission, by rule, or order, may exempt, conditionally or unconditionally, any institutional investment manager . . . ." 15 U.S.C. § 78m(f)(2); *see also id.* § 78m(f)(4) (requiring subsection 13(f)(2) exemptions to be consistent with the purposes of section 13(f) and the protection of investors). Second, under paragraph 13(f)(3), the Commission "may delay or prevent public disclosure" "as it determines it to be necessary or appropriate in the public interest or for the protection of investors." *Id*. § 78m(f)(3). Managers seeking a permanent exemption under paragraph 13(f)(2) or temporary confidential treatment under paragraph 13(f)(3) must submit enough information on Form 13F for the Commission to make an informed judgment as to the merits of the request. Letter

from Douglas Scheidt, Assoc. Dir. & Chief Counsel, Div. of Inv. Mgmt, SEC to Section 13(f) Confidential Treatment Filers, at 1 (June 17, 1998), *available at* http://www.sec.gov/divisions/investment/guidance/13fpt2.ht m (last visited Dec. 12, 2010) [hereinafter Scheidt, SEC Letter]; *see also* 17 C.F.R. § 240.24b-2(b)(2)(ii) (requiring "a statement of the grounds of objection referring to, and containing an analysis of, the applicable exemption(s) from disclosure under the Commission's rules and regulations adopted under the Freedom of Information Act").[3] For example, when seeking temporary confidential treatment, managers must provide a description of their investment strategy and explain why disclosure would be detrimental. *See* SEC Order Denying Full Value's Request for Confidential Treatment, No. 34-61328, at 2 (issued Jan. 11, 2010), 2010 SEC LEXIS 46, at *4–5 (citing Form 13F instructions).

In October 2006, Full Value filed a request for an exemption under paragraph 13(f)(2), asserting its investment positions were trade secrets for which paragraph 13(f)(1) effectuated an unconstitutional taking by providing the Commission discretion to place the information in the public domain. Soon thereafter, Full Value also filed a request for confidential treatment under paragraph 13(f)(3), seeking confidential treatment of all securities "that [it] would otherwise be required to disclose." Rather than provide the requisite Form 13F information, however, Full Value asked "to be excused from complying with certain instructions that are applicable to routine confidential treatment requests." In addition, Full Value claimed the Commission's filing

---

[3] Under the regulations and Form 13F instructions, information subject to confidential treatment is nonpublic pending review of the application. *See* Scheidt, SEC Letter at n. 4.

requirements compelled it to speak, in violation of the First Amendment.

On January 11, 2010, the Commission denied both Full Value's request for a paragraph 13(f)(2) exemption and its request for paragraph 13(f)(3) confidential treatment of its investment positions. The Commission held Full Value did not provide the factual support necessary for an informed judgment on the merits of Full Value's confidential treatment request and therefore denied it. The Commission further held "absent extraordinary circumstances" an institutional investment manager may not seek an exemption pursuant to § 13(f)(2) in order to avoid public disclosure of its holdings unless it first seeks in good faith confidential treatment pursuant to § 13(f)(3). As Full Value did not meet that requirement, the Commission also denied Full Value's request for exemption.

Full Value makes two arguments on appeal. First, the Fund argues subsection 13(f) compels speech in violation of the First Amendment. Second, Full Value argues subsection 13(f) constitutes an uncompensated taking in violation of the Fifth Amendment. Full Value alleges each constitutional violation with respect to both public disclosure of its investment position by the Commission and its own preliminary disclosure to the Commission. Full Value disclaims any challenge to the Commission's interpretation of the Act or any regulation promulgated thereunder. Appellant's Reply Br. 2. Thus, we review Full Value's petition only insofar as it presents constitutional claims.

II

Article III courts, as courts of limited jurisdiction, must first consider whether authority exists to hear a case before

moving on to the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

The judicial power extends only to a cognizable case or controversy. U.S. CONST. art. III, § 2. Therefore, "article III does not allow a litigant to pursue a cause of action to recover for an injury that is not 'certainly impending,'" *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48 (D.C. Cir. 1999) (quoting *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996)), and courts have developed doctrines to "test the fitness of controversies for judicial resolution," *La. Envtl. Action Network v. Browner*, 87 F.3d 1379, 1382 (D.C. Cir. 1996). The ripeness doctrine is one example.

Ripeness, along with the prohibition against advisory opinions, stems from the constitutional case or controversy requirement and "requires us to consider 'the fitness of the issues for judicial review and the hardship to the parties of withholding court consideration.'" *Vill. of Bensenville v. FAA*, 376 F.3d 1114, 1119 (D.C. Cir. 2004) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds by Califano v. Sanders,* 430 U.S. 99 (1977)); *see Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 138 (1974); *accord Harris v. FAA*, 353 F.3d 1006, 1011–12 (D.C. Cir. 2004). "In determining the fitness of an issue for judicial review [after agency action], we look to see whether the issue is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *Clean Air Implementation Project v. EPA*, 150 F.3d 1200, 1204 (D.C. Cir. 1998). In evaluating hardship, we do not consider "direct hardship, but rather whether *postponing* judicial review would impose an undue burden on [the parties] or would benefit the court." *Harris*, 353 F.3d at 1012 (quotation marks omitted);

*accord Bensenville*, 376 F.3d at 1120; *see also AT&T Corp. v. FCC*, 349 F.3d 692, 700 (D.C. Cir. 2003). Because of the prudential considerations which innervate the ripeness doctrine, at times, we "dismiss[] even if there is not a constitutional bar to the exercise of our jurisdiction." *Wyo. Outdoor Council*, 165 F.3d at 48.

A

Full Value claims the public disclosure mandated by § 13(f)(1) compels speech in violation of the First Amendment. This presents a purely legal question and might be otherwise "fit for review." Prudence, however, "restrains courts from hastily intervening into matters that may best be reviewed at another time or in another setting, especially when the uncertain nature of an issue might affect a court's 'ability to decide intelligently.'" *La. Envtl. Action Network*, 87 F.3d at 1382 (citation omitted) (quoting *Am. Trucking Ass'ns v. ICC*, 747 F.2d 787, 790 (D.C. Cir. 1984)). This is especially true when the issue is one of constitutional import. *See Connecticut v. Duncan*, 612 F.3d 107, 114 (2d Cir. 2010). It is not yet certain Full Value will be required to comply with paragraph 13(f)(1); the Commission may yet grant Full Value an exemption under paragraph 13(f)(2). If Full Value does not have to comply with 13(f)(1), the constitutional issue will not have to be resolved. *Cf. Hayburn's Case,* 2 U.S. (2 Dall.) 408 (1792) (declining to issue an advisory opinion).

Moreover, delaying the constitutional decision will impose no hardship on Full Value. So far, Full Value has filed only an application for exemption under paragraph 13(f)(2) and a request for confidential treatment under paragraph 13(f)(3). Because those filings did not reveal investment positions, the Commission has not yet produced a 13(f)(1) report. Hence, Full Value's allegedly proprietary

information has not been disclosed publicly, and Full Value has not yet suffered any hardship as a result of the Act's disclosure requirements. Full Value may avoid public disclosure of its holdings in the future by submitting the requisite information and obtaining confidential treatment or, thereafter, an exemption from the reporting requirements. When and if relief is denied, Full Value will be able to seek judicial review of the Commission's decision before its filings are made public. *See La. Envtl. Action Network*, 87 F.3d at 1381. In sum, Full Value's First Amendment claim satisfies neither condition for ripeness and we will not consider it at this time. *See Munsell v. Dep't of Agric.*, 509 F.3d 572, 585–87 (D.C. Cir. 2007).

B

Full Value's Fifth Amendment claim is not ripe either. As we have seen, Full Value might avoid the harm it alleges will follow inevitably from public disclosure of its investment positions, and avoid the regulatory taking it argues paragraph 13(f)(1) effects, if it obtains confidential treatment or an exemption. A claim is not ripe where the "possibility that further consideration will actually occur before [implementation] is not theoretical, but real." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 735 (1998); *see Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 190–91 (1985). Here, the Commission is free to consider whether Full Value's investment positions constitute a trade secret or other cognizable property interest under the Fifth Amendment before disclosing the information to the public. Indeed, the paragraph 13(f)(3) confidential treatment process, and the procedures established by the Commission thereunder, specifically contemplate further evaluation. *See* 17 C.F.R. § 240.24b-2(b)(2). Full Value's takings claim cannot

possibly be in a "concrete and final form," *Eagle-Picher Indus., Inc. v. U.S. EPA.*, 759 F.2d 905, 915 (D.C. Cir. 1985), unless and until the Commission denies the Fund's satisfactorily detailed request and threatens public disclosure of its purported property. Only at that juncture will Full Value's claims become ripe for review.

C

Before proceeding to the merits, we pause to consider the intersection between the ripeness and exhaustion doctrines in this case. As stated above, ripeness concerns the fitness of issues for review. Exhaustion, on the other hand, focuses on process—in particular, the process a litigant must go through at the agency level to ensure the agency has ample opportunity to "crystallize[] its policy before that policy is subjected to judicial review." *Ticor Title Ins. Co. v. FTC*, 814 F.2d 731, 735 (D.C. Cir. 1987). At times, we have described these two doctrines as both "analytically distinct," *Unity08 v. F.E.C.*, 596 F.3d 861, 865 (D.C. Cir. 2010), and yet "difficult to distinguish," *John Doe, Inc. v. Drug Enforcement Admin.*, 484 F.3d 561, 567 (D.C. Cir. 2007), or "complementary." *Ticor Title Ins. Co.*, 814 F.2d at 735. Our inconsistent description underscores the simple fact that in certain contexts the two doctrines remain distinct, and in others they blend together. Full Value arguably exhausted its claim in this case by filing requests for an exemption under paragraph 13(f)(2) and confidential treatment under paragraph 13(f)(3). But the company complied with the form of the exemption rather than its substance. The agency had no more opportunity to "crystallize its policy" than had Full Value proceeded directly to this Court. So, did Full Value fail to exhaust or are its claims simply unripe? We need not finally decide. Full Value's failure to fully comply with the Commission's process (i.e. exhaust) has left some of its claims unfit for

review (i.e. unripe) and that is perhaps not surprising given the two doctrines' common origins; they are both "prudential doctrines" designed to "respond to pragmatic concerns about the relationship between courts and agencies." *John Doe, Inc.*, 484 F.3d at 567.

## III

### A

Full Value views its inability to control what the Commission does with investment information divulged in the course of an application for confidential treatment or an exemption request as a form of compelled speech. If the Commission determines the information is not entitled to confidential treatment or Full Value does not qualify for an exemption, the Commission is required to publicly disclose it. 15 U.S.C. S 78m(f)(3).

The freedom of thought protected by the First Amendment against state action "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). First Amendment concerns are paramount when the Government compels a speaker to endorse a position contrary to his beliefs, or to "affirm[] a belief and an attitude of mind" he opposes. *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 633 (1943) (requiring schoolchildren to salute the flag is unconstitutional); *see also, e.g.*, *Pac. Gas & Elec. Co. v. Pub. Util. Comm'n of Ca.*, 475 U.S. 1, 20 (1986) (requiring a utility company to distribute a third party's newsletter in its own billing envelopes is unconstitutional); *Wooley*, 430 U.S. at 705, 717 (requiring a citizen to display the state motto is unconstitutional); *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974) (requiring newspapers to publish replies

from political candidates is unconstitutional). First Amendment concerns may even be present when the state compels speech in a content-neutral manner. *See Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994) ("regulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny, because in most cases they pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue.") (citation omitted); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 188 (3d Cir. 2005).

The disclosure required under paragraphs 13(f)(2) and 13(f)(3) does not raise the same constitutional concerns. Here the Commission—not the public—is Full Value's only audience. The Act is an effort to regulate complex securities markets, inspire confidence in those markets, and protect proprietary information in the process. It is not a veiled attempt to "suppress unpopular ideas or information or manipulate the public debate through coercion rather than persuasion." *Turner Broad.*, 512 U.S. at 641. In this respect, paragraphs 13(f)(2) and 13(f)(3) are indistinguishable from other underlying and oft unnoticed forms of disclosure the Government requires for its "essential operations." *W. Va. Bd. of Educ.*, 319 U.S. at 645 (Murphy, J., concurring) (rejecting First Amendment claim when "essential operations of government may require [disclosure] for the preservation of an orderly society,—as in the case of compulsion to give evidence in court.") For example, without violating the First Amendment, the Government requires individuals to submit income tax information to the IRS. *United States v. Sindel*, 53 F.3d 874, 878 (8th Cir. 1995) (First Amendment is not implicated by requirement of disclosure to IRS that entails no public dissemination of a political or ideological message).

Securities regulation involves "a different balance of concerns" and "calls for different applications of First Amendment principles." *Nike, Inc. v. Kasky*, 539 U.S. 654, 678 (2003) (Breyer, J., dissenting from the dismissal of certiorari as improvidently granted) (noting *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978) ("Numerous examples could be cited of communications that are regulated without offending the First Amendment, such as the exchange of information about securities . . . .")). This principle applies *a fortiori* when disclosure is to the Commission alone. Congress enacted paragraphs 13(f)(2) and 13(f)(3) to protect an institutional investor's confidential information when doing so is warranted. Compelling disclosure to the Commission alone so the Commission may determine whether confidential treatment is warranted is a rational means of achieving that goal. *See Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (rejecting argument that disclosure requirements are subject to a "strict 'least restrictive means' analysis"); *Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 316 (1st Cir. 2005) (describing the applicable constitutional scrutiny for government disclosure as "akin to the general rational basis test governing all government regulations under the Due Process Clause").

B

In a similar vein, Full Value argues disclosure to the Commission is an unconstitutional taking. The Fifth Amendment prohibits the taking of private property for public use without just compensation. U.S. CONST. amend. V. A "regulatory taking" is one in which a government regulation is "so onerous that its effect is tantamount to a direct appropriation or ouster." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). To constitute a regulatory taking, the Government action must (1) affect a property interest and (2)

go "too far" in so doing (i.e. amount to a deprivation of all or most economic use or a permanent physical invasion of property). *Ruckleshaus v. Monsanto Co.*, 467 U.S. 986, 1000–01, 1005 (1984). In determining how far is too far, we consider several factors, including "the character of the governmental action, its economic impact, and its interference with reasonable investment-backed expectations." *Id.* at 1005 (quoting *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 83 (1980)).

Even if we assume the compilation of Full Value's securities holdings constitutes a property interest, disclosure to the Commission does not constitute a taking because the regulations requiring disclosure do not go "too far." First, paragraphs 13(f)(2) and 13(f)(3) have a legitimate public purpose—to promote competition and decrease volatility in the markets, and to mitigate the potential harm in doing so by "grant[ing] confidential treatment to an ongoing investment strategy of an investment manager." S. Rep. No. 94-75, at 87 (April 14, 1975). Second, disclosure to the Commission produces no economic harm. The Commission ensures that sensitive information submitted pursuant to paragraph 13(f)(2) or paragraph 13(f)(3), such as trade secrets, remains confidential, and the value of a trade secret is not destroyed if it is disclosed to a party that is under obligation to protect it. *Cf. Ruckleshaus*, 467 U.S. at 1002 ("[I]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information . . . his property right is extinguished."). Lastly, because paragraphs 13(f)(2) and 13(f)(3) were in effect before Full Value reached the $100,000,000 statutory threshold triggering its paragraph 13(f)(1) disclosure requirement, Full Value could not have reasonable investment-backed expectations. *See Rowe*, 429 F.3d 294, 315 (1st Cir. 2005) (no reasonable expectation because disclosure statute's effective date

predated contract); *cf. Phillip Morris, Inc. v. Reilly*, 312 F.3d 24, 39–41 (1st Cir. 2002) (reasonable expectation because no prior regulation).

IV

To the extent Full Value's claims rest on potential public disclosures of its investment positions, they are not ripe. Full Value will not have to disclose its positions to the public if the Commission grants an exemption or provides confidential treatment. Of course, for the Commission to properly consider Full Value's confidential treatment and exemption requests, Full Value must provide the Commission with sufficient information to make an informed judgment. Mere disclosure to the Commission does not raise First Amendment concerns. Paragraphs 13(f)(2) and 13(f)(3) have a rational basis and do not require Full Value to endorse or acknowledge positions that are anathema to its managers. There is no public audience Full Value must address. Nor does disclosure to the Commission raise Fifth Amendment concerns under *Ruckleshaus* even assuming Full Value has a cognizable property interest in knowledge of its investment positions.

*So ordered.*