# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 20, 2018   Decided December 7, 2018

No. 17-7151

MARTIN SCAHILL AND HRH SERVICES LLC,
APPELLANTS

v.

DISTRICT OF COLUMBIA, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-02076)

*Brendan J. Klaproth* argued the cause and filed the briefs for appellants.

*Richard S. Love*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellees. With him on the brief were *Karl A. Racine*, Attorney General, and *Loren L. AliKhan*, Solicitor General. *Caroline S. Van Zile*, Deputy Solicitor General, entered an appearance.

Before: GARLAND, *Chief Judge*, and ROGERS and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: This appeal arises from conditions placed by the D.C. Alcoholic Beverage Control Board on the liquor license of the Alibi restaurant. The court must decide whether the curable defect exception to issue preclusion allows a plaintiff to establish standing under Article III of the Constitution based on events that arose after the initial complaint was filed, and whether the license conditions violate appellants' First and Fifth Amendment rights. The district court had ruled the original complaint controlled its jurisdiction as to most of HRH Services, LLC's constitutional claims. On the merits, it ruled that HRH's retaliation allegations and Scahill's nearly identical constitutional allegations failed to state a claim.

Guided by Supreme Court instruction and precedent from our sister circuits, we hold that HRH properly invoked the curable defect doctrine and that the district court was wrong to reject HRH's proposed second amended complaint that would have cured the standing defect. We deny on the merits HRH's claims that were dismissed for lack of standing, and consequently HRH's unconstitutional conditions claim fails as well. HRH's compelled speech claim is foreclosed by *Full Value Advisors*, *LLC v. SEC*, 633 F.3d 1101, 1109 (D.C. Cir. 2011), which held that required notification of the government does not constitute compelled speech. HRH's commercial association claim is foreclosed by *Roberts v. U.S. Jaycees*, 468 U.S. 609, 620 (1984), and *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989).

We affirm the dismissal of HRH's First Amendment retaliation claim because even assuming the facts alleged in the complaint are true, the record shows that retaliation was "not a plausible conclusion," *Ashcroft v. Iqbal*, 556 U.S. 662, 682

(2009). We also affirm the dismissal of Scahill's claims. His commercial association claim fails for the same reasons as HRH's; his freedom of movement claim fails under the court's precedent; and his procedural due process claim fails to identify a cognizable liberty or property interest.

**I.**

In January 2015, HRH Services, LLC, d/b/a The Alibi ("HRH") applied to the D.C. Alcoholic Beverage Control Board for a license to serve alcoholic beverages at the Alibi restaurant. Rachel Traverso and her father Richard Traverso were identified as co-owners of HRH, but the Board was concerned about the possible involvement of Martin Scahill, who had been part owner of the previous restaurant at that location, which was fined by the Board for allowing underage drinking. Scahill had originally applied with two others for a liquor license at the same location before withdrawing the application when the Board raised issues regarding his qualifications. He also had been working at the Alibi restaurant. The Board "required HRH to demonstrate that it was not engaging in subterfuge to allow Mr. Scahill to obtain a license without the legally required review of his qualifications for licensure." ABC Board Order at 3 (May 18, 2016) ("2016 Board Order"). At a hearing on HRH's application, HRH informed the Board it had served a barring notice on Scahill that he could not be on the premises and stated it would accept other license conditions as the Board deemed necessary. *See id.* ¶ 90.

On May 18, 2016, the Board granted HRH a liquor license with conditions. The conditions required HRH to "maintain a barring notice against Martin Scahill to prohibit him from entering or accessing the licensed premises for a period of five years" and to notify the Metropolitan Police Department

("MPD") of any violations. The conditions also prohibited HRH from "directly or indirectly transfer[ing] or attempt[ing] to transfer ownership" of the business to Scahill, providing him "access or control over any financial accounts maintained by the business," and "employ[ing] [him] as a manager, employee, independent contractor, or volunteer" at the restaurant. 2016 Board Order at 36-37. The Board denied HRH's motion for reconsideration.

Scahill and HRH thereafter unsuccessfully attempted to have the license conditions set aside on statutory grounds. The D.C. Court of Appeals dismissed HRH's petition for review under the D.C. Administrative Procedure Act ("DCAPA") for lack of standing because of its lack of aggrievement. *HRH Servs., LLC v. D.C. Alcoholic Beverage Control Bd.*, No. 16-AA-758, Order at 1 (D.C. Oct. 13, 2016). The court rejected on the merits Scahill's claims under the DCAPA that the imposition of the license conditions exceeded the Board's authority and was unsupported by the evidence and arbitrary and capricious, holding the Board acted within its discretion. *Scahill v. D.C. Alcoholic Beverage Control Bd.*, No. 16-AA-775, Mem. Op. and J. at 5-7 (D.C. Feb. 8, 2018).

Scahill and HRH also seek to have the license conditions set aside on constitutional grounds. After filing a complaint in the U.S. district court on October 18, 2016, Scahill filed an amended complaint on December 28, 2016, adding HRH as a plaintiff and arguing that the license conditions violated their First and Fifth Amendment rights. The district court granted the government's motion to dismiss the amended complaint for lack of standing and failure to state a claim. *Scahill v. District of Columbia*, 271 F. Supp. 3d 216 (D.D.C. 2017); *see* FED. R. CIV. P. 12(b)(6). Except as to HRH's First Amendment retaliation claim based on appellants' legal challenges to the license conditions, the district court ruled that issue preclusion

prevented HRH from re-litigating its standing in view of the D.C. Court of Appeals' determination that it was not aggrieved by the Board's license order. On the merits, the district court ruled that Scahill and HRH had failed to allege sufficient facts to support the remainder of their claims.

HRH moved on October 16, 2017, for reconsideration and for leave to file a second amended complaint. Paragraph 60 of the proposed complaint alleged that in retaliation for exercise of HRH's First Amendment rights, the Board, by order of July 19, 2017, "took adverse action against HRH Services by issuing a $4,000.00 fine, the maximum allowable penalty, to HRH [S]ervices for the alleged violation[s] of the Liquor License conditions." The Board found that HRH had allowed Scahill to be on the premises of the Alibi restaurant on two occasions and each time failed to notify the MPD about his presence. Although agreeing that HRH had shown an injury-in-fact as a result of the $4,000 fine, the district court ruled that the fine did not trigger the curable defect exception to issue preclusion because the fine was imposed nine months after the original complaint was filed and thus was too late to confer standing. *Scahill v. District of Columbia*, 286 F. Supp. 3d 12, 18 (D.D.C. 2017). The district court also denied the motion for leave to file as futile, stating the proposed second amended complaint would not change its view of the inadequacy of HRH's retaliation claim. *Id.* at 20-24.

## II.

On appeal, Scahill and HRH contend that the district court erred in ruling that HRH lacked standing under Article III of the Constitution on the basis of issue preclusion because the court should have applied the curable defect exception in view of the Board's imposition of the fines and granted its motion for leave to file the amended complaint. On the merits, they

contend that the district court erred in ruling that their well-pleaded claims failed to show violations of their rights under the First and Fifth Amendments of the Constitution.  Our review of the dismissal of the complaint for failure to state a claim is *de novo*.  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000).  So too is our review of the denial of leave to amend the complaint based "on grounds of futility where the proposed pleading would not survive a motion to dismiss," *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 215-18 (D.C. Cir. 2010) (internal quotation marks and citation omitted).

Issue preclusion occurs when (1) the same issue was "contested by the parties and submitted for judicial determination in [a] prior case," (2) the issue was "actually and necessarily determined by a court of competent jurisdiction in that prior case," and (3) preclusion does not result in "basic unfairness to the party bound by the first determination." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992).  The district court correctly found all conditions were met with respect to HRH's standing to bring a challenge to the Board's license order, in view of the decision of the D.C. Court of Appeals dismissing HRH's petition for review upon concluding it was not aggrieved by the Board's conditions.

First, the issue of HRH's standing was "contested" and "submitted for judicial determination," *id.*  The D.C. Court of Appeals issued an order to show cause why HRH's petition should not be dismissed for lack of standing because HRH did not appear to be aggrieved by the Board's conditions, and HRH filed a response.  Appellants maintain that standing under the DCAPA is different from Article III standing because in addition to showing injury-in-fact, the interest sought to be protected must be arguably within the zone of interests protected by the DCAPA, and no clear legislative intent must

withhold judicial review. HRH acknowledges that both require an injury-in-fact, which is the aspect relevant here, for aggrievement under the DCAPA requires the same concrete and particularized injury as Article III standing. D.C. Code § 2–510(a); *see Mallof v. D.C. Bd. of Elections & Ethics*, 1 A.3d 383, 394 (D.C. 2010); *York Apartments Tenants Ass'n v. D.C. Zoning Comm'n*, 856 A.2d 1079, 1085 (D.C. 2004); *Dist. Intown Props., Ltd. v. D.C. Dep't of Consumer & Regulatory Affairs*, 680 A.2d 1373, 1377 (D.C. 1996). HRH objects that the D.C. Court of Appeals order dismissing its petition did not set forth the grounds for its holding but HRH ignores the order to show cause. Second, the issue was "actually and necessarily determined by a court of competent jurisdiction," *Yamaha*, 961 F.2d at 254, because the D.C. Court of Appeals dismissed HRH's petition for lack of standing in view of its non-aggrievement, and that court has jurisdiction over petitions regarding D.C. agency orders, *see* D.C. Code § 2–510(a). Third, applying issue preclusion involves no basic unfairness to HRH because the order to show cause put HRH on notice and HRH had the same incentives to litigate this standing issue before the D.C. Court of Appeals where it was challenging the same license conditions.

The curable defect exception to issue preclusion allows relitigation of jurisdictional dismissals when a material occurrence subsequent to the original dismissal remedies the original deficiency. *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 41 (D.C. Cir. 2015); *see Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1192 (D.C. Cir. 1983). Neither the Supreme Court nor this court has decided whether the lack of Article III standing at the outset of litigation is determinative of the court's jurisdiction because events occurring subsequent to the filing of the original complaint cannot cure that deficiency. The district court relied on *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008), for the proposition that "[t]he standing

inquiry is 'focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed.'" *Scahill*, 286 F. Supp. 3d at 19 (quoting *Davis*, 554 U.S. at 734). There, Jack Davis, a candidate for a seat in the U.S. House of Representatives, challenged the asymmetrical campaign contribution limits under Section 319(a) of the Bipartisan Campaign Reform Act of 2002, 2 U.S.C. § 441a–1(a), as violative of his First Amendment rights, because the provision allowed his opponent to be subject to higher campaign contribution limits in view of Davis's expenditure of his personal funds. *Davis*, 554 U.S. at 729-31. Rejecting the Federal Election Commission's view that Davis could not show the requisite injury because his opponent had yet to qualify for the higher limits at the outset of the litigation and ultimately chose not to take advantage of them, *see id.* at 734, the Supreme Court held that Davis faced the requisite Article III injury when he declared his intent to spend his personal funds and there was no suggestion that his opponent would forgo the Section 319(a) advantage. *Id.* *Davis*, then, held that Article III injury is satisfied at the outset of the litigation even if the anticipated injury fails to come to fruition, but does not address whether subsequent events can provide standing that was lacking at the outset.

More instructive is the Supreme Court's precedent where jurisdiction was determined by looking beyond the original complaint. In *Mathews v. Diaz*, 426 U.S. 67, 75 (1976), a Medicare applicant did not file his Part B application until after he was joined as a plaintiff in an amended complaint. Although 42 U.S.C. § 405(g) made filing an application a "nonwaivable condition of jurisdiction," the Supreme Court held that condition was met. The Court stated it had "little difficulty" in holding that the district court had jurisdiction over the plaintiff's constitutional claim. *Id.* Citing Federal Rule of Civil Procedure 15(d), the Court stated that "[a] supplemental

complaint in the District Court would have eliminated this jurisdictional issue." *Id.* Likewise, in *Rockwell International Corp. v. United States*, 549 U.S. 457, 460 (2007), the Court made clear that the original complaint was not dispositive of jurisdiction. There, the Court stated that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Id.* at 473-74 (citations omitted). In determining jurisdiction, the Court looked to the final pretrial order, which "superseded all prior pleadings and 'controll[ed] the subsequent course of the action,' Fed. Rule Civ. Proc. 16(c)." *Id*. at 474. The Court observed that it did not matter that the pleadings were not formally amended. *Id.* (citing FED. R. CIV. P. 15(b) and 16; other citations omitted).

A number of the circuit courts of appeal have addressed whether events subsequent to the filing of the original complaint can cure a jurisdictional defect. Some courts have held that a plaintiff may cure a standing defect through a supplemental pleading alleging facts that arose after the original complaint was filed. *See Northstar Fin. Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1044 (9th Cir. 2015); *United States ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 6 (1st Cir. 2015); *Daniels v. Arcade, L.P.*, 477 F. App'x 125, 131 (4th Cir. 2012); *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1337 (Fed. Cir. 2008); *Travelers Ins. Co. v. 633 Third Assocs.*, 973 F.2d 82, 87-88 (2d Cir. 1992). Other courts have affirmed the dismissal of the original complaint for lack of jurisdiction even if subsequent events cured the standing deficiency, so that the plaintiff would have to file a new lawsuit to pursue the claims. *See S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013); *Pollack v. U.S. Dep't of Justice*, 577 F.3d 736, 743 (7th Cir. 2009); *Park v. Forest Serv. of U.S.*, 205 F.3d 1034, 1037-38 (8th Cir. 2000).

The circuit courts of appeal adopting the former approach have relied on the supplemental pleadings provision of Federal Rule of Civil Procedure 15(d), which provides such pleading may "set[] out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented," FED. R. CIV. P. 15(d).[1] The Advisory Committee has explained that Rule 15(d) was amended in order to place broad discretion in the district court in order to avoid "needlessly remitt[ing] [plaintiffs] to the difficulties of commencing a new action even though events occurring after the commencement of the original action have made clear the right to relief." *Id.*, advisory committee notes to 1963 amendment. Tracking this approach, the Ninth Circuit in *Northstar Financial Advisors Inc.*, 779 F.3d at 1042, affirmed the district court's decision to allow Northstar to file an amended complaint as a supplemental pleading pursuant to Rule 15(d), *id.* at 1043-44, where it had filed a shareholder class action lawsuit against an investment trust before obtaining an assignment of claims allowing suit on the shareholders' behalf, *id.* at 1043. Permitting subsequent pleadings to correct jurisdictional defects "circumvents the needless formality and expense of instituting a new action when events occurring after the original filing indicated a right to relief." *Id.* at 1044 (internal quotation marks and citation omitted). Although Rule 15(d) refers to deficiencies "in stating a claim or defense," FED. R. CIV. P. 15(d), the court concluded

---

[1] Federal Rule of Civil Procedure 15(d) provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

there was no reason why a jurisdictional defect should be different, relying in part on the Supreme Court's discussion of amended pleadings in *Matthews v. Diaz* and *Rockwell International Corp. v. United States*. *See Northstar*, 779 F.3d at 1044.

The government acknowledges the open jurisdictional question in this court and the Supreme Court and the circuit split. Citing the Tenth Circuit's 2013 decision as "significant authority contrary to plaintiffs' position," Appellee's Br. at 22, the government offers no analysis of which approach this court should adopt. Instead the government maintains that even assuming that there is merit to the *Northstar* approach, appellants cannot prevail because their proposed second amended complaint had not been accepted for filing when the district court considered HRH's standing in view of the Board's imposition of the $4,000 fine. This approach harkens back to the type of technical obstacle that the Supreme Court rejected in *Rockwell International Corp.*, 549 U.S. at 474, and that the amendment to Rule 15(d) was designed to avoid. Appellants simultaneously filed their motions for reconsideration and for leave to file a second amended complaint, and the district court considered the motions together. *See Scahill*, 286 F. Supp. 3d at 15. The government offers no reason why Rule 15(d)'s reference to "claim or defense" would weigh in favor of a different interpretation. *See Northstar*, 779 F.3d at 1044. To the extent the government suggests this court's review of the denial of appellants' motion for leave to file the second amended complaint is for abuse of discretion only, maintaining there can be no such abuse when the law is unsettled, it overlooks *In re Interbank Funding Corp. Securities Litigation*, 629 F.3d at 215-18, which holds review is *de novo* when the denial is based on futility.

Therefore, we hold that a plaintiff may cure a standing defect under Article III through an amended pleading alleging facts that arose after filing the original complaint. The alternative approach forces a plaintiff to go through the unnecessary hassle and expense of filing a new lawsuit when events subsequent to filing the original complaint have fixed the jurisdictional problem. The "reasonable notice" and "just terms" limitations in Rule 15(d) guard against undue expansion of a provision designed to eliminate "needless[] remitt[ing]" of a plaintiff. FED. R. CIV. P. 15 advisory committee notes to 1963 amendment. Because the district court found that HRH suffered an injury-in-fact as a result of the imposition of the $4,000 fine nine months after HRH filed its original complaint in federal court, HRH properly invoked the curable defect exception to issue preclusion. The district court, consequently, was wrong to reject HRH's proposed second amended complaint that included allegations about the Board's enforcement action that would have cured the standing defect. We turn, therefore, to the merits.

## III.

HRH contends that the license conditions violate its First Amendment rights against compelled speech and its right of commercial association. Absent a finding that HRH has such constitutional rights, appellants' counsel conceded, Oral Arg. Tape 9:50-10:19 (Sept. 20, 2018), that HRH cannot prevail on its claim that the license conditions are unconstitutional conditions.

HRH's compelled speech claim is based on the license conditions requiring HRH to report any violation of the barring notice to the MPD and the Board. This claim is foreclosed by *Full Value Advisors*, 633 F.3d at 1108-09. There, the court held that requiring notification of the government does not

constitute compelled speech because First Amendment concerns are not implicated where the government requires disclosures for its operations, such as requiring individuals to provide information about their income in tax returns. *Id.* Similarly, here, the District of Columbia government has an interest in restricting the ability to sell alcohol to applicants who are "of good character and generally fit for the responsibilities of licensure," D.C. Code § 25–301(a)(1), and an interest in promoting public safety, *see Marusa v. District of Columbia*, 484 F.2d 828, 834 (D.C. Cir. 1973). HRH thus fails to state a claim that the license conditions compel its speech in violation of its First Amendment rights.

HRH's commercial association claim is foreclosed by *U.S. Jaycees*, 468 U.S. at 620, and *Stanglin*, 490 U.S. at 25. The Supreme Court has recognized the right to intimate association and expressive association, *U.S. Jaycees*, 468 U.S. at 617-18, but no general right of social association, *Stanglin*, 490 U.S. at 25. As a result, prohibiting HRH from employing or hosting Scahill on the Alibi restaurant premises does not violate a cognizable associational right. Because no constitutional rights of HRH were violated, HRH's unconstitutional conditions claim also fails.

HRH's retaliation claim is unavailing. In the proposed second amended complaint, HRH alleges that the Board's enforcement action resulting in the fines was in retaliation for HRH's and Scahill's efforts to overturn the license conditions by filing a motion for reconsideration by the Board, petitioning the D.C. Court of Appeals, and filing a complaint in federal court. Even assuming the truth of the allegations in the complaint, the district court did not err in concluding retaliation was "not a plausible conclusion." *Iqbal*, 556 U.S. at 682.

To establish a First Amendment retaliation claim, HRH must show (1) "that [it] engaged in protected conduct," (2) "that the government took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again," and (3) "that there exists a causal link between the exercise of a constitutional right and the adverse action taken against him." *Doe v. District of Columbia*, 796 F.3d 96, 106 (D.C. Cir. 2015) (internal quotation marks and citation omitted). To establish the causal link, the constitutional speech must be the but-for cause of the retaliatory action. *Id.* at 107.

HRH did not plausibly allege the requisite causation. Although it maintains that investigators appeared at the Alibi restaurant in retaliation for appellants' legal challenges, the Board relied on testimony that D.C. investigators visited the Alibi restaurant on two occasions in response to complaints that Scahill was seen at the restaurant. *See* ABC Board Order ¶¶ 12, 19 (July 19, 2017) ("2017 Board Order"). The proposed second amended complaint alleges that the Board unreasonably fined HRH even though one of the two investigators, Ms. Cullings, "testified under oath that she never identified Mr. Scahill as being present at the Alibi on June 10, 2016." Proposed Second Am. Compl. ¶ 63. The Board could properly rely on testimony from the other investigator, Mr. Brashears, who was familiar with Scahill and identified him talking to Rachel Traverso and working at the restaurant; Ms. Cullings testified that she had no reason to doubt this. Appellants also object to the district court's adoption of the Board's factual findings, but HRH attached the 2017 Board Order to its motion for leave to amend the complaint and the district court need not "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice," *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004).

Scahill's commercial association claim fails for the same reasons as HRH's fails. His Fifth Amendment claims fail as well. Appellants contend Scahill adequately pleaded a substantive due process claim based on his right to travel. But, as the district court ruled, neither the Supreme Court nor this court has recognized a general right to intrastate travel. *See Hutchins v. District of Columbia*, 188 F.3d 531, 537-38 (D.C. Cir. 1999). In these circumstances, Scahill has no substantive right to be in a particular place at a particular time, namely to be at the Alibi restaurant. Scahill's procedural due process claim that the license conditions prevent him from being able to enter and eat at the Alibi restaurant and from pursuing his chosen profession without due process likewise fails because he did not identify a cognizable liberty or property interest. Appellants point to no authority that a cognizable liberty interest is implicated by the ban from one commercial establishment. Nor is Scahill thereby deprived of his "right to follow a chosen trade or profession without governmental interference," *O'Donnell v. Barry*, 148 F.3d 1126, 1141 (D.C. Cir. 1998) (internal quotation marks and citation omitted), merely because he cannot work at one particular establishment in the District of Columbia. To the extent that Scahill asserts a property right on the basis of his status as a guarantor on the Alibi lease, such a property interest must "stem from an independent source such as state law," *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972), and Scahill has not identified any state law or term of the lease agreement that gives him a property interest as result of his status as a guarantor.

Accordingly, we affirm the September 25, 2017 dismissal of Scahill's claims and HRH's First Amendment retaliation claim; we reverse the December 11, 2017 denial of HRH's motions for reconsideration and for leave to file the second

amended complaint; and we affirm the dismissal of HRH's remaining claims.